ROBERT J. EDWARDS & another, executors, vs. WILLIAM
C. BARNES, appellant.

Worcester.    September 28, 29, 1896. — December 8, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Executor's Account — Trust Deed — Consideration — Recording after Grantor's
Death — Power of Executor to sell Land for Payment of Debts.*

If, when a deed of land is made, there is an existing debt due from the grantor to
the grantee, to whom the deed and an instrument of defeasance give the title in
trust to sell the land and reimburse himself out of the proceeds, and subsequent
advances are made by him to the grantor as contemplated, the conveyance is
for a valuable consideration, and is not void as in fraud of creditors.

Land conveyed by a deed not recorded until after the death of the grantor is not
assets for the payment of his debts due to creditors who have not attached the
land during the grantor's lifetime.

APPEAL from a decree of the Probate Court, allowing the
account of the executors of the will of William Edwards. Hear-
ing before *Barker*, J., who reported the case for the considera-
tion of the full court, in substance as follows.

William Edwards died on June 16, 1886, testate, and the ac-
count allowed is the only one which the executors have rendered,
and it covers their administration from the testator's death until
January, 1895.    William Edwards was a business man.    He had
a brother Jacob, who lent him money and also helped him by
his credit, and from the year 1875 until William's death he was
largely indebted to Jacob.    The amount of this indebtedness at
the time of William's death was $50,000 or more.

William had valuable real estate, which became marketable
before his death.    During the later years of his life, after the
year 1877, William himself sold and conveyed a number of par-
cels of his land.    In 1877, William executed a trust deed of all
his lands to Jacob, who executed a defeasance of the trust deed.
These instruments were one transaction.    Both were dated on
August 1, 1877, and acknowleged on September 24, 1877, and
were delivered in the autumn of 1877.

The deed recited that William Edwards, " in consideration of
thirty thousand dollars paid by Jacob Edwards," conveyed to

the latter certain lots of land in Southbridge, to have and to hold the same " in trust." The instrument of defeasance, after setting out the conveyance, recited that Jacob Edwards held the deed in trust as security for all present or future indebtedness of William to him " arising from any business transactions, and for all future advances and liabilities " which he might incur for William ; that, upon the payment and discharge of all such indebtedness by William or his representatives, Jacob would reconvey the lands to him or them ; that, in case the same should not be paid and discharged, " I shall be obliged to sell and dispose of said lands "; and that, after deducting from the proceeds of the sale the full amount of the indebtedness, he would pay the surplus to William, his heirs or assigns, and reconvey to him or them all remaining lands so conveyed to Jacob.

After they were delivered they were placed by William and Jacob Edwards in the custody of a third person, with instructions to place the deed on record if either William or Jacob should die. The custodian kept the instruments until he learned of the death of William, and on June 17, 1886, he caused the deed from William to Jacob to be recorded. The transaction of which the deed and defeasance were part was not known to any one, except the brothers and their attorneys and servants, until after the death of William.

When that transaction was made, and ever afterwards until his death, William had many creditors other than his brother Jacob. The appellant is one of the other creditors to whom William was so indebted, and the debts owed to him at William's death are yet due from the estate.

After the delivery of the deed and defeasance of 1877, and down to the time of William's death, he continued in the possession and apparent ownership of the lands conveyed to Jacob by the deed, except such portions of them as William from time to time sold and conveyed as his own, and William obtained credit from the present creditors of his estate on account of his apparent possession of and record title to the lands, and in one instance Jacob stated to the appellant that William was worthy of credit and was all right because he had settled up with Jacob and did not owe him. The transaction of 1877 was in fact kept

secret by William and Jacob and their attorneys and servants intentionally.

The accountants were informed, after the death of William, of the defeasance of August 1, 1877, and as executors they have treated the transaction of August 1, 1877, as a mortgage, the effect of which was to secure whatever debts or liabilities existed on William's part to Jacob at the time of William's death. The accountants have received about $50,000 from the sale, since William's death, of the lands conveyed by William to Jacob by the deed of August 1, 1877, and have applied or suffered to be applied the same in liquidation, so far as it went, of the debts and liabilities existing on William's part to Jacob at William's death, treating such debts and liabilities as the principal of a mortgage due to Jacob, and evidenced by the deed and defeasance; and the accountants have not kept any part of the proceeds of the sales of real estate as assets of the estate of William for the payment of his debts, and have not charged themselves in their account as executors with any part of such proceeds.

The accountants duly represented the estate of William Edwards to be insolvent, and commissioners were appointed on March 1, 1887, to receive and examine all claims of creditors against his estate, and to return to the Probate Court a list of all claims presented, whether allowed or not, with the sums allowed on each, computing the net amount due on June 16, 1886, the time of his death.

The report of the commissioners was returned to the Probate Court on July 2, 1889, showing claims of eight creditors allowed in the sum of $25,026.02, and one claim of $500 not allowed. Of the claims allowed, one in favor of Sullivan Moore of $13,431.83 has been appealed from, so that the claims now standing as allowed amount to the sum of $11,594.19, of which the claim of the present appellant is allowed for the sum of $700. The claims of Jacob Edwards were not presented to the commissioners.

If the proceeds of the real estate which stood in William's name of record at the time of his death are not assets of his estate for the payment of debts, there are no sufficient assets for the payment of the claim of the appellant or of

the other creditors whose claims have been allowed by the commissioners.

The appellant contended that, as he and the other creditors of William's estate whose claims have been allowed against it by the commissioners had no notice or knowledge of the deed of August 1, 1877, until it was recorded on June 17, 1886, that deed was void and of no effect as to them; that the lands purported to be conveyed by that deed, and which were in the open occupation and possession and apparent ownership of William Edwards up to and at the time of his death, were lands liable to be sold by the accountants for the purpose of paying the debts of the deceased under the provisions of Pub. Sts. c. 134, §§ 1, 2; that as to the appellant and such other creditors of the estate as had no notice or knowledge of the deed of August 1, 1877, until after the death of William, and as to the accountants as executors, the latter had no right to treat the debts and liabilities existing from William to Jacob at the death of William as a mortgage debt secured by the deed and defeasance of August 1, 1877, and had no right to apply the proceeds of the lands sold to the reduction or payment of that indebtedness as a mortgage debt; that it was the duty of the accountants to hold the proceeds of the sales of such lands as assets for the payment of the debts of William, as the same might be proved against his estate; and that it was the duty of the accountants to charge themselves in their account with all the proceeds of the sales of all the real estate sold after the death of William, as assets for the payment of his debts and the charges of the administration of his estate.

If, upon the facts stated, it was the duty of the accountants to· charge themselves with the proceeds of the lands of their testator sold since his death as assets for the payment of his debts generally, and if they ought not to have treated the deed and defeasance of August 1, 1877, as constituting a mortgage in payment of which they could apply the proceeds of the sales of the mortgaged lands without charging themselves with such proceeds in their account, the decree of the Probate Court allowing the account was to be reversed, and the accountants were to be ordered to account for the proceeds of all sales of the lands of William Edwards made since his death; otherwise, the decree was to be affirmed.

*T. G. Kent,* (*J. C. F. Wheelock & G. T. Dewey* with him,) for the appellant.

*F. P. Goulding,* (*J. M. Cochran* with him,) for the appellees.

BARKER, J.   An examination of the instruments of August 1, 1877, called in the report a trust deed and defeasance, shows that they do not constitute a mere mortgage, but give the title to Jacob Edwards in trust to sell the lands and to reimburse himself out of the proceeds.   The sales made since the death of the grantor have been made upon this footing, and the proceeds have been applied to the extinguishment of the debt due to Jacob Edwards.   These proceeds were in fact money of the trust, and not of the estate of the grantor ; and the appellees are not chargeable with them in their executors' account, if they have the right to regard the trust as valid.   See *Keith* v. *Molineux,* 160 Mass. 499.   As there was an existing debt due from the grantor to Jacob Edwards when the trust deed was made, and as subsequent advances were made as contemplated, the conveyance was for a valuable consideration, and was not void as in fraud of creditors. The appellant's contention is, that because the deed was not recorded until after the death of the grantor, the lands conveyed were lands which were " liable to attachment or execution by a creditor of the deceased in his lifetime," and that therefore, by the operation of Pub. Sts. c. 134, § 2, they could be sold by the accountants for the payment of the debts of their testator, notwithstanding the conveyance.

It is true that up to the death of the grantor these lands were liable to attachment or execution by any of his creditors who had no notice of the unrecorded deed.   But it seems to be a general principle founded upon justice, that lands of which the apparent record title stands in a debtor, but which in fact do not belong to him, can be taken in payment of his debts only by individual creditors.   See *Smythe* v. *Sprague,* 149 Mass. 310, and cases cited.   Language substantially similar to that of Pub. Sts. c. 134, § 2, is used in Pub. Sts. c. 157, § 46, as to the property of an insolvent, namely :   " The assignment shall vest in the assignee all the property of the debtor . . . which might have been taken on execution upon a judgment against him."   In *Smythe* v. *Sprague* it was held that, under this provision, land conveyed by an insolvent for a valuable consideration to a *bona fide* pur-

chaser by a deed not recorded until after the assignment in insolvency was not property of the debtor, and did not pass to the assignee. The decision was upon the ground that a creditor with no notice of the deed has the right to take the land on execution, not because it is the property of the grantor, but because the grantee, in violation of the registry laws, has failed to record his deed, and thereby has committed a constructive fraud upon the creditor, and is therefore estopped to set up his title against him ; that this right is a personal right of the creditor which enures to his own benefit solely ; that the grantee by recording his deed may, without any other conveyance, perfect his title ; and that, if the statute should be construed to vest such property in the assignee, it would unjustly vest in him, not the property of the insolvent, but that of his grantee.

The same considerations apply to an unrecorded conveyance made by a person who dies before his deed is recorded, and compel a similar construction of the statute authorizing sales of lands of a deceased person for the payment of his debts. The title passes in each case, and in each no one but an attaching creditor has the right to contend that the grantee is estopped from setting up his title, and in the case of a deceased person it would not be the lands of his estate which would go to pay his debts, but the lands of his grantee. Whatever may be the power of an executor or administrator in a case where a creditor has attached the lands during the life of the grantor, in a case like the present, where there was no such attachment, the executors have no power to sell the lands which their testator had in fact conveyed by the unrecorded deed.

*Decree of Probate Court affirmed.*