F. & M. SCHAEFER BREWING COMPANY *vs.* HENRY MOEBS & others.

Suffolk.   December 5, 1904. — March 25, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Equity Jurisdiction,* To reach and apply equitable assets.   *Fraud,* As against creditors.

In a suit in equity to reach and apply to the payment of a debt property alleged to have been conveyed by the debtor to his sons in fraud of creditors, if it appears that the debt due to the plaintiff is a little over $6,000, that the property conveyed to the sons was worth $4,100, and that the debtor owed his sons $2,600, it may be found that there was no fraud in the transaction, a mere preference of particular creditors not being a fraud apart from statute.

LATHROP, J.   This is a bill in equity, filed in the Superior Court on May 12, 1902, under the R. L. c. 159, § 3, cl. 8, to reach and apply in payment of a debt property alleged to have been conveyed in fraud of creditors by Henry Moebs, the first named defendant, to the other defendants, his sons.

The case was sent to a master who found the following facts. At the time of the conveyances hereinafter referred to, Henry Moebs had been engaged in business in Boston for about twenty-six years, at 193 Hampden Street, where he conducted a restaurant and a wholesale and retail liquor business, with a bottling establishment.   He had licenses of the first, fourth and fifth classes.   His three sons were employed by him in the business, two of them as bartenders at weekly wages, and the other,

Joseph, being in charge of the bottling establishment on a commission. The three sons lived at home with their father, but it did not appear that any of them except Joseph paid for board and lodging. At the time of the conveyances and for some time before the father was afflicted with rheumatism, and was unable properly to attend to business. For a period of over five years, the sales in the business had been falling off, so that at the time of the conveyances it was being conducted at little or no profit.

On April 10, 1901, the father sold to his son Joseph three horses, two delivery wagons, one buggy and some harnesses, for an expressed consideration of $600. This consideration consisted of a previous loan in the form of a check for $502.80, dated January 7, 1901, and deposited in the bank on April 10, 1901, and the balance, $97.20, was paid in cash on the day of the sale. These chattels remained in the possession of the father and were used by him in his business until April 28, 1902.

On the last named day the father gave to his three sons a bill of sale of all the fixtures of the establishment 193 Hampden Street, for an expressed consideration of $600, which was paid in cash by one of the sons. He was also indebted to this son in the sum of $200, and he owed Joseph $1,200. These sums formed part of the consideration.

The master treated the two conveyances as one transaction, and found that the good will of the business was included, though not specifically mentioned.

Against the objection of the defendants, the master ruled that the good will of the business included the licenses, and admitted evidence of the value of a first class liquor license in 1902 for purposes of transfer subject to the approval of the police commissioners of Boston. This value he found to be on April 28, 1902, $1,900. It was admitted that new licenses for the year beginning May 1, 1902, were issued to the sons, and that the father sent a letter to the police commissioners, asking and consenting that this be done.

The master further found that on April 28, 1902, the father was owing and unable to pay other debts than the one due the plaintiff, and that the father at that time informed his sons of his financial condition.

The master also found that the amount due the plaintiff was $6,076.35, in May, 1902, when the demand was made; that the actual value of the property conveyed, including $1,900 for the license and $300 for the good will, was $4,100; and that the consideration paid by the sons in cash and money due them from the father amounted to $2,600.

The master ruled that there was a sufficient consideration to support the conveyance; and that the above mentioned acts did not constitute such a fraud as was necessary to invalidate the conveyance.

The master stated in his report that there was no other evidence tending to show that the father had derived any benefit or advantage from the transfer, and found that the conveyance was not made in fraud of creditors; that the bill should be dismissed as against the sons, and that judgment should be rendered against the father in the sum of $6,082.15.

The plaintiff and the first named defendant filed objections and exceptions to this report. The Superior Court overruled the plaintiff's exceptions and three of the first named defendant's exceptions, and sustained the other exceptions. In other respects the report of the master was confirmed, and a decree was entered establishing the plaintiff's claim in the sum of $6,082.15, with interest and costs, and dismissing the bill as against the sons with costs in the sum of $10 to each of them. From this decree the plaintiff appealed to this court.

As we understand the decree the Superior Court disallowed these items of the master's report, namely, $300 for the good will, and $1,900 for the value of the license. We are of opinion that the Superior Court was justified in finding that the value of the good will of the business was worth nothing in view of the finding of the master that for a period of over five years the sales in the business had been falling off, so that at the time of the conveyances it was being conducted at little or no profit.

Whether the Superior Court was right in deducting the $1,900 which the master found to be the value of the license, is a matter of more difficulty. The considerations in favor of the deduction are that the license expired in two days from the time of the conveyance on April 28. It was not transferred to the sons, and, if they carried on the business from April 28 to May 1,

they did it without a license; and under our laws a license is personal to the licensee. St. 1885, c. 83, § 1. On the other hand, the master has found, as we have seen, that a license has a value for the purpose of transfer, under the practice of the police commissioners of the city of Boston. In some cases in bankruptcy it has appeared in evidence that the police commissioners in Boston sometimes allow a license to be surrendered to be cancelled, and in place of it another to be issued to the new firm · or persons applying for it. In .such a case it has been held that a bankrupt may be compelled by a bankruptcy court to surrender his license to the trustee in bankruptcy. *In re Fisher*, 98 Fed. Rep. 89; *S. C.* on appeal, *nom. Fisher* v. *Cushman*, 103 Fed. Rep. 860. The decision in the case of *In re Becker*, 98 Fed. Rep. 407, proceeded on the ground that the laws of Pennsylvania allowed a license to be transferred subject to the approval of the court of quarter sessions. It is indeed said in *In re Brodbine*, 93 Fed. Rep. 643, 644: "It has already been held that the right to apply for a renewal of a liquor license in Boston passes to the trustee in bankruptcy." We are informed by the learned judge of the District Court who wrote the opinion that the case referred to is not reported, and that the statement is inaccurate in " that, strictly speaking, there may be no legal right to apply for a liquor license." The point of the decision referred to was that a court of bankruptcy may require a bankrupt to assign his license to the trustee in bankruptcy, as was decided later on in the cases above cited.

We do not, however, find it necessary to determine whether the master or the judge of the Superior Court was right as to the license, for in either event we should reach the conclusion arrived at by the decree.

The master found that the conveyance was for a sufficient consideration. We cannot say, as matter of law, that there was so great a difference between the consideration paid and the value of the assets that the finding of the master was not justified. Inadequacy of consideration is generally held to be evidence of fraud but not necessarily conclusive. See *Bayspoole* v. *Collins*, 18 W. R. 730; *S. C.* on appeal, L. R. 6 Ch. 228.

The master also found that there was no fraud; and there

was no evidence of a secret trust in favor of the first named defendant. The most that can be said is that there was a preference in favor of particular creditors. But a preference is not a fraud at common law. *Banfield* v. *Whipple,* 14 Allen, 13. *Giddings* v. *Sears,* 115 Mass. 505. *Carr* v. *Briggs,* 156 Mass. 78. See also *Edwards* v. *Barnes,* 167 Mass. 205.

We have not dealt with the plaintiff's exceptions seriatim, but we have covered the questions of law raised thereby.

It remains to consider some of the cases cited by the plaintiff in support of its contention that in any event it is entitled to the difference between the amount of assets received by the sons and the consideration paid by them. The cases cited in support of this proposition are not cases of an absolute sale for a valuable consideration, but are cases where there was a voluntary gift with no consideration. *Parkman* v. *Welch,* 19 Pick. 231, 235, 236. *Norton* v. *Norton,* 5 Cush. 524, 528. *Harmon* v. *Osgood,* 151 Mass. 501, 505.

We find nothing else which requires discussion.

*Decree affirmed.*

*F. H. Stewart,* for the plaintiff.

*G. W. Anderson,* for the defendants, submitted their case without an argument or brief.