# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

### SINNOTT *v.* KENADAY.

WILLS; SPECIFIC LEGACIES; EXECUTORS AND ADMINISTRATORS; ORPHANS' COURT; COMMISSIONS; FUNERAL EXPENSES.

1. Bequests by a testator to his wife, who is named as executrix, of a particular class of claims, and his business as claim agent and as publisher of a periodical, together with all books, papers, files, etc.; also, of certain shares of stock and "notes and other evidences of indebtedness to me, of more or less value;" also deposits of currency to his credit amounting to $10,000, more or less, in a certain bank—are specific, and will not embrace after-acquired United States bonds, or lapsed legacies, or other personal estate of which the testator died possessed.

2. An executrix, as such, takes no beneficial interest in any portion of the personal estate of the testator undisposed of by the will, but takes the estate only for the purposes of administration and distribution to those entitled to it.

3. The Supreme Court of this District, holding a special term for orphans' court business, has jurisdiction under the Maryland Act of 1798, Ch. 101, to direct and enforce the distribution of such undisposed-of residue of a testator's estate in the hands of his executrix.

4. A bequest by a testator of a certain municipal bond to "my wife and executrix," does not of itself indicate that it was made by way of compensation and that it is to be taken by her in lieu of commissions.

5. An allowance to an executrix by the Supreme Court of this District, holding a special term for orphans' court business, of commissions within the limits prescribed by the Act of Maryland of 1798, Ch. 101, Subch. 10, Sec. 2, is conclusive, and is not subject to review in an appellate court.

6. Expenses incurred by an executrix for a cemetery lot and a mon-

14 Ct. App.—2

ument for her testator, are not funeral expenses within the meaning of a statute limiting funeral expenses to $300 ; and an allowance to her of credit in her account for the purchase of such a lot and monument, is proper, where there has been no extravagance and the rights of creditors and even of legatees have not been prejudiced.

7. Where certain United States bonds, bequeathed by a testator, are of denominations capable of specific delivery, and the legatees desire such delivery, it is the duty of the executrix to deliver the bonds ; but where it appears on the hearing of exceptions to the final account of an executrix, that the legatees, under such circumstances, were content to have the bonds sold and they received the money and receipted for it, they can not be heard to urge an objection to the sale.

No. 855. Submitted November 8, 1898. Decided January 3, 1899.

HEARING on an appeal by exceptants from an order of the Supreme Court of the District of Columbia, holding a special term for Orphans' Court business, approving and passing a final account of an executrix. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. F. P. B. Sands* and *Mr. W. A. Milliken* for the appellants:

1. The executrix is not entitled to any commission in this case, for two reasons. She admits that she 'has appropriated to her own use this entire personal estate, after paying the special legacies, and this before her account had been approved and passed. This is a *devastavit* on her part, and she thereby forfeits all right to commissions. Another reason is, that the testator, in the fifth item of his will, bequeaths the city of Richmond bond for $5,000 to "my wife and executrix." This, we contend, was intended to go to her as " executrix," and was to be in lieu of all commissions. If this $5,000 which is given to her as executrix is appropriated by her to her own use, then we submit it must be taken in place of any claim by her as executrix for commissions. She clearly can not have both commissions and the legacy to her as " executrix."

2. The second error is in allowing the executrix credit for

the Rock Creek Cemetery burial lot, $317; and for monument, $575—$892. This credit is in addition to that for funeral expenses, amounting to $268.50. The statute limits such expenses to $300. There is no authority in law nor in this will for the items for burial lot and monument.

3. The next and great error is in allowing the claim by the executrix to the entire balance of this estate as shown by her settlement. This balance, the executrix states in her account, she has appropriated to her own use, claiming same under a clause in the second item of the will, which reads, "Also, notes and evidences of indebtedness to me of more or less value." This balance consists of $11,000 in registered U. S. 4 per cent. bonds, and $1,657.50, the proceeds of sale of $1,500 of such bonds, conceding that she had power to make the sale, and which proceeds must be considered and treated as bonds. The real contention is, therefore, that the words in the second item of this will, " also notes and evidences of indebtedness to me of more or less value," mean these U. S. 4 per cent. registered bonds. There is no residuary clause in this will. Did the testator intend by this sentence to bequeath these U. S. 4 per cent. registered bonds to his wife? There is not a word in the will to support such a construction, but everything goes to show the testator had no reference to his U. S. 4 per cent. registered bonds, which he recites were on special deposit, in this sentence.

There are certain well settled rules of construction applied to wills, that are familiar to this court, and need only be referred to. The intention of the testator controls. This intention must be expressed in the will. To ascertain this intention, the court will look to the entire will. Such a construction will be given to a will as will make the different items consistent and harmonious, if possible. The court will look to the surrounding circumstances of the testator at time of executing the will in order to aid in ascertaining his intentions.

There is another important rule that enters into this case: "A will speaks generally from the death of the testator, but in many cases it speaks from the date of its execution." See Jarman on Wills, 288, and notes; Redfield on Wills, 379–82. For instance, in all specific legacies, the will speaks from date of its execution, as any alteration of such a legacy, by the testator, operates as its ademption. In all such cases it is absolutely necessary for the court to construe the will according to the facts and circumstances existing at the date of the execution of the will. On examining this will it will be found that all the legacies are "specific," and hence in its construction it must be considered as speaking from its date of execution.

A plain, common-sense view of the clause in question shows it had no reference to United States bonds. The rule "*ejusdem generis*" applies to this clause with full force, and shows its true intent and meaning. It occurs in connection with a recital of doubtful claims which the testator had in litigation—a claim for taxes, an account for moneys withheld by a trustee, his business as a claim agent, and as publisher of the "Vidette," books and papers, and office furniture, etc., and Sutro tunnel stock and Comstock bonds— all of which were at his office, and were utterly worthless, and which his executrix reports in her account and inventory as worthless; and it is in such connection we find this sentence, "also notes and evidences of indebtedness to me of more or less value;" and this is the claim under which the executrix has appropriated $11,000 in United States 4 per cent. registered bonds, and the proceeds of $1,500 more to her own use.

The second item of this will in which this sentence occurs can not, however, be construed as devising the articles mentioned therein to anyone. There is not in this entire section one word giving its contents to this executrix. It is simply an enumeration of personal property which the testator had at his office. The word "Item" in a will has a

distinct effect and purpose. See 2 Redfield on Wills, 463; Schouler on Wills; Jarman on Wills, 790. Where it is employed as in this will it shows the purpose of the testator to arrange his bequests and the objects thereof into separate paragraphs, grouping each legatee and legacy in a different item. You can look to them all to aid in the construction of each one, but there must be positive words in each item, bequeathing the articles enumerated therein to someone. It can not be supplied by implication. Chancellor Kent has well said, that courts are sometimes obliged to say " *Sic voluit sed non dixit.*" The intent must be gathered not from what the testator might have said or intended to say, but from what he did say—from his express words. *Chamberlain* v. *Owings*, 30 Md. 454; 4 Kent's Com. 535–38; *Clark* v. *Smith*, 49 Md. 106–117. It would be pure guesswork to undertake to say to whom the testator intended the personalty mentioned in Item 2 of his will to go. It can only be by inference that it can be held to have been intended for the wife. But even if you so infer, the same insurmountable difficulty arises, for there is not a word or phrase giving these articles to anyone. This is a fatal omission in this item and can not be supplied by construction. The testator may have intended to give them to his wife, but he failed to use the necessary language to do so.

4. There is another rule which applies to the construction of wills, and which comes before us with great force in this case, and it is a rule which courts enforce most rigorously —the heir or next of kin can not be disinherited except by express devise or bequest. 2 Redfield on Wills, 425; *Wilkins* v. *Allen*, 18 How. 385. The heir must have the benefit of any and all doubts affecting their rights. 2 Law Rep. An. 849 and note, and 716–719, note. See, also, Jarman on Wills, 725–748. Mere negative or doubtful words are not sufficient. 18 How. 385. The heir or next of kin can not be deprived of his estate by mere implication. One claiming under a will that which the law otherwise

gives to the heir or next of kin, must establish his claim by positive words, by express language.   2 Redfield on Wills, 425 ; 18 How. 385.

5. Again, this record shows that the legacy to Eloise Piles, $500, and to Henry C. Piles, $250, have not been paid out by this executrix, but remain in her hands, because they have both lapsed.   Eloise Piles died before the testator, and Henry C. Piles has been absent and not heard of during the last seven years, although diligent search and advertisements have been made for him.   He is believed to be dead. These two legacies of course having lapsed, go back into the estate, and as there is no residuary clause in this will, these items go to appellants as next of kin of the testator.  2 Law Rep. An. 849, note.   Jarman on Wills, 725–748.

A failure to insert a residuary clause in this will resulted in his dying intestate as to the $9,000 additional United States 4 per cent. registered bonds purchased subsequent to the date of the will, and the lapsed legacies, and they go to appellants.   Jarman on Wills, 725–748.

There is nothing in this record to show with what moneys the testator purchased these $9,000 additional bonds, but it is believed he used the $10,000 he then had on deposit in the National Metropolitan Bank in the purchase.   If this be . true, it would operate as an ademption of that legacy to his . wife under that clause, if this court should be of the opinion that the testator has, by Item 2 of his will, bequeathed the articles therein mentioned to his wife.   2 Red. Wills, 431, and authorities cited.

*Mr. William Henry Dennis* for the appellee:

1. The enforced distribution of any residue in the hands of an executor, after payment of debts and legacies, is exclusively within the jurisdiction of equity or chancery, and the doctrine is unknown in any other court.   *Pettit* v. *Smith*, 1 P. Wms. 7; *Hatton* v. *Hatton*, 2 Strange, 865; 2 Wms. on Exrs. (1st Ed.), *1270.

In *Pettit* v. *Smith* and *Hatton* v. *Hatton* writs of prohibition were granted against the spiritual court in such cases. Moreover, in the subsequent Act of 1 Wm. IV, Ch. 40, limiting the right of executors to retain a surplus undisposed of by will, Parliament expressly recognizes the exclusive jurisdiction of chancery in such a case and directs that in the specified cases "executors shall be deemed by courts of equity to be trustees," etc. ⸱2 Wms. on Exrs. *899.

This shows the doctrine of chancery as we derived it from England. The framer or framers of the Maryland Act of 1798, Chap. 101, which is our testamentary code in this District, showed themselves adepts in that system of law, and where they desired to change it, they did so carefully, in express words, and cut off any chance of doubt by providing towards the end of the act against any "pretext of incidental power or constructive authority" in the orphans' court. Act of 1798, Ch. 101, Subch. 15, Sec. 20. They were certainly familiar with the particular doctrines above mentioned, but nowhere do they attempt to change them; and they therefore left the matter in the exclusive jurisdiction of equity, which certainly seems the best disposition to make of such an often difficult problem. If there were a transfer of the jurisdiction it would naturally be found in our "Statute of Distribution," which is Subchapter 11 of the Maryland Act of 1798. But that subchapter is closely a re-enactment of the English "Statute of Distribution," 22 and 23 Chas. II, Ch. 10, and applies only to an administrator having in charge the goods of an intestate.

Where a testator, as in this case, appoints an executrix, he does not "die intestate" ⸱as to any part of his personal property, for the legal title to all of it vests in the executrix, subject only to the obligation of paying debts and legacies. Story, Eq. Jur., Sec. 1208; *Hays* v. *Jackson*, 6 Mass. 149; Lowndes on Legacies, 249, 250. The Statute of 22 and 23 Chas. II, Ch. 10, was in force when the decisions were made that the courts corresponding to our orphans' court

had no jurisdiction to compel an executor to distribute a balance not bequeathed. By re-enacting it, by a familiar principle of statutory construction, the decisions upon its meaning also became law. 23 Am. & Eng. Encyc. L. 370.

2. Even if this question had come here through the proper channel, the appellants could not prevail in face of the natural, obvious and reasonable construction of the will. The rule of construction particularly applicable is that laid down by Jarman as No. 16, viz: "That words, in general, are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected, and that other can be ascertained; and they are in all cases to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative; and of two modes of construction, that is to be preferred which will prevent a total intestacy." The other rule is that a widow who has relinquished her *pars rationabilis* or thirds of the personal estate, and accepted the provision made for her by her husband's will, has a much stronger claim to a liberal construction in her favor than the heir at law has against a devisee or next of kin against a legatee, inasmuch as she is a purchaser for a fair consideration. This is strongly and emphatically declared in *Durham* v. *Rhodes*, 23 Md. 233, 242.

The principle that the comparative values of what is relinquished and gained by the wife makes no difference in the application of the rule is declared by the Supreme Court of the United States. *Sykes* v. *Chadwick*, 18 Wall. 141.

3. At the death of testator the deposits in the National Metropolitan Bank, instead of $10,000, were found to be only $810.60. But to this amount the widow was certainly entitled as a legacy. The United States bonds, instead of $15,500, amounted to $24,500. It has been suggested as a conjecture that the testator took over $9,000 from bank and invested it in $9,000 of these bonds. If so, it only tends to

show all the more that the widow should not be deprived of these bonds on a technicality, unless the court were absolutely constrained to such a harsh result; and such is not the case. The court below sustained the view of the counsel for executrix that these bonds, or what remained of them after paying debts and expenses, vested in her as " evidences of indebtedness," which they certainly are. This bequest of " evidences of indebtness" is of the most generic character, and not of any specific evidences or kind of "evidences." Such generic bequests have been held repeatedly, in England and this country, to pass all property of that genus owned by the testator at his death. Here there is nothing limiting the bequest to any specific articles. On the contrary, the indefinite words "of more or less value," like the words "more or less" which closely follow, aid the construction of the whole clause as being most general, as of an amount likely to vary, and intended to guard against any partial intestacy. The absence of any express mention of a "residue" in a will otherwise so carefully and minutely drawn, is thus explained; having exhausted all *genera* of his personal estate, the testator foresaw that there would be no "residue." In other words, the will, in favor of the widow, speaks from the date of testator's death, and includes all the "evidences of indebtedness to me, of more or less value," that testator left at his death. It may be worth observing that all these United States bonds are registered in testator's name, and therefore all the more aptly described as evidences of indebtedness "to me." *Van Vechten* v. *Van Vechten*, 8 Paige (N. Y. Ch.), 104, 116.

The same principle is sustained in *Gold* v. *Judson*, 21 Conn. 622, and also in *Dalrymple* v. *Gamble*, 68 Md. 523, and in other cases perhaps even more strongly. *Turpin* v. *Turpin*, Wythe (Va.), 22 ; *Allen* v. *Harrison*, 3 Call (Va.), 289; *Warner* v. *Swearingen*, 6 Dana (Ky.), 195 ; *Means* v. *Evans*, 4 Des. (S. C.), 242 ; *Dennis* v. *Dennis*, 5 Rich. (S. C.), 468 ; *O'Brien* v. *Edwards*, 2 Edwards (N. Y.), 242 ; *Gilmer* v. *Gil-*

*mer,* 42 Ala. 9; 2 Wms. on Executors, \*885 ; 1 Jarman on Wills (5th Ed.), \*319, 326 ; *All Souls College* v. *Coddrington,* 1 P. Wms. 597 ; *Wilde* v. *Holtzmeyer,* 5 Ves. 816 ; *Masters* v. *Masters,* 1 P. Wms. 424; *Bridgman* v. *Dove,* 3 Ark. 201 ; *Bland* v. *Lamb,* 2 J. & W. 399. In *Banks* v. *Thornton,* 11 Hare, 176, a bequest of " all the residue of my property which consists of stock " was held to include all stock in the testator's possession at his death. The courts, in general, are averse from construing legacies to be specific; and the intention of the testator that they should be so, must be clear. 2 Williams on Executors, \*741.

Any reasonable construction of a will, consistent with its terms, will be adopted by the courts in order to give it effect to dispose of the testator's entire property, instead of holding that he died intestate as to part. *Minkler* v. *Simons,* 172 Ill. 323 : 50 N. E. Rep. 176 ; *Hardenbuy* v. *Ray,* 151 U. S. 112.

It is not necessary that a clause of a will, in order to have the effect of a residuary clause, shall be the last clause, or that it shall contain any technical word such as " residue," and it may be followed, without impairing its effect, by a special bequest, which will be treated as an exception out of it, liable to fall back into it in case of lapse. To limit the effect of such a clause to part of the residue, very special words which clearly limit the gift, and show a clear intention to exclude such portion of the property as fails to pass under other clauses of the will must be used. *Morton* v. *Woodbury,* 153 N. Y. 243.

4. As already indicated, the exceptions of the appellants can not benefit them if they can not establish their right to a distribution of some sort of surplus or residue of the estate, which right is herein respectfully denied to exist.

(*a*) The first exception is not appealable as regards the rate or amount of the commissions, being within the discretion vested in the orphans' court, and not over 10 per cent. *Wilson* v. *Wilson,* 3 G. & J. 201; *Parker* v. *Gwynn,* 4

Md. 423. Certainly no abuse of discretion appears in the present case, especially in view of the litigation and expense for counsel fees, etc., to which the executrix has been subjected. The orphans' court is presumed to have a knowledge of the circumstances when it fixes the rate of commission. As to the city of Richmond bond, the will declares that it "is hereby devised and bequeathed to my wife and executrix." The concluding four words are obviously a mere *descriptio personæ*, in lieu of repeating his wife's name, Mary Louise Kenaday, which is set forth only once, at the beginning of the will. There is nothing in the will to indicate that it was meant for the executrix, "by way of compensation," as required by the Act of 1798, Ch. 101, Subch. 14, Sec. 5, and there is no reason for presuming so.

(*b*) The second exception appears to be abandoned, and if so, wisely. Commissions can not be apportioned on different parts of an estate. *Mayo* v. *Bland*, 4 Md. Ch. 484. Commissions must be computed upon the inventory, that is to say, upon all the assets. *McPherson* v. *Israel*, 5 G. & J. 60; *Lemmon* v. *Hall*, 20 Md. 171.

(*c*) The third exception, objecting to the purchase of a burial site and the erection of a tombstone, is of a kind that it is never agreeable to contend about. The will provides that "all my . . . funeral charges shall be paid out of my estate by my executrix." The purchase of a lot comes under this head. *Chalker* v. *Chalker*, 5 Redf. (N. Y.), 480. Custom and respect sanction a tombstone. 5 Redf. (N. Y.), 69; 5 Redf. (N. Y.) 480. See *Bainbridge's Appeal*, 97 Pa. St. 482. As against legatees or next of kin, such expenses may be incurred as will bury the deceased according to the station he occupied in life. 5 Am. & Eng. Encyc. L., 250, note. The limitation in the statute of $300 for funeral expenses, does not prohibit a testator from authorizing his executrix to act on her discretion, so long as creditors are not injured.

(*d*) The fifth exception refers to the sale of $1,500 of

United States bonds, and to this the answer is two-fold: The executrix states in her answer to the exceptions, which is not denied or contradicted in any way, that she sold these bonds to pay the legacies to the nieces and nephews of testator, and they gave her receipts in full for said legacies and professed themselves satisfied. If there were any irregularity in exercising the undoubted power which the executrix had to sell these bonds, in not getting an order of the orphans' court beforehand, it is cured by the order of the court approving the account in which the sale is reported.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is taken by the sister, and the children of a deceased sister, as the next of kin of the late Alexander M. Kenaday, deceased, from an order of the court below, approving and passing what would appear to be a final account settled by the executrix of the deceased. And the questions presented on the appeal, as stated in the assignment of errors, have relation to the construction of the last will and testament of the deceased; the power and jurisdiction of the special term of the Supreme Court of this District, sitting to transact orphans' court business, to make and enforce distribution of the residue or surplus of the personal estate of the deceased, not specifically or expressly disposed of by his will; and also as to the right of the executrix to be allowed certain sums claimed as credits in her account, against the exceptions of the appellants.

The deceased, Alexander M. Kenaday, died in this city of Washington, on March 25, 1897, leaving a last will and testament bearing date the 3d of April, 1894, and by which his widow, Mary Louise Kenaday, was made sole executrix, and which will was duly proved and admitted to probate, and letters testamentary were granted to the executrix named. The deceased left no child or descendant; but he left one sister surviving, and several children of a deceased

sister, who pre-deceased the testator. The surviving sister and some of the children of the deceased sister are the appellants in this appeal, and the widow, the sole executrix, is the appellee.

The case has been in this court on a former appeal (*Sinnott* v. *Kenaday,* 12 App. D. C. 115); but the specific questions now presented were not then decided by this court. We did, however, say, that the court below would have the power and jurisdiction to grant relief of the nature then prayed, upon a petition filed at the proper time. The petition in that case had been prematurely filed. There had been, at that time, no final or other account, in the nature of a full account, stated by the executrix and approved by the court, showing the true condition of the estate. The final, or what is substantially a full account, has now been stated, and distribution thereon made. The appellants excepted to the account and distribution, but the exceptions were overruled, and the account and distribution were approved and passed by order of the court of October 11, 1898. It is from that order that this appeal is taken.

By the will of the testator, all his real estate, of considerable quantity and value, was devised to his wife, and also a considerable portion of his personal estate. He specifies by general designation a particular class of claims bequeathed to his wife; and he then bequeaths to her his business as a claim agent, and as publisher of "The Vidette," together with all books, papers, files, furniture, etc., etc., also 200 shares of the Sutro tunnel stock and Comstock bonds; also notes and evidences of indebtedness to him, "of more or less value;" also deposits of currency entered on his bank book of the National Metropolitan Bank amounting to $10,000, more or less.

He then gives to his sister, Mrs. Arabella D. Sinnott, of New Orleans (the sister who survives him), $12,000 in registered United States 4 per cent. bonds, on special deposit in the National Metropolitan Bank.

Then follow gifts to the children of Mrs. Piles, his deceased sister, " out of the *residue* of 4 per cent. bonds deposited as aforesaid $3,500 as follow:"—naming the legatees, and the amounts given to each, though the several amounts added only make $3,000, and not $3,500—thus leaving of the residue of $3,500 United States bonds on deposit in bank, $500 undisposed of. It is alleged by the appellants that of these amounts thus given to the children of Mrs. Piles, the legacy of $500 given to Eloise Piles, and the legacy of $250 given to Henry C. Piles, have both lapsed by the death of the legatees in the lifetime of the testator.

By another clause of the will there is a promissory note for $1,100, secured by a chattel mortgage, made by Mrs. Hemenway, which he directed to be canceled, and that his executrix might allow Mrs. Hemenway $500 in settlement of her account. And then in what appears to be a separate clause of the will he declares that " the bond of the city of Richmond for $5,000 bearing 5 per cent. interest, payable January and July (on special deposit with the 4 per cent. bonds of the United States in the National Metropolitan Bank) is hereby devised and bequeathed to my wife and executrix."

There are some other special provisions in the will, but nothing in addition to what we have recited that is at all material to the questions raised on this appeal. *There is no residuary clause in the will.*

It appears by a certificate from the United States Treasury Department, that about a year after the date of the will, that is, on the 1st of April, 1895, the testator acquired and left standing in his name and to his credit, in the Treasury of the United States, additional $9,000 United States registered 4 per cent. bonds, and thus making the sum total of United States bonds held to his credit at the time of his death amount to $24,500. And in the absence of a residuary clause or bequest in the will, the principal question here is, to whom should these after acquired bonds, and the

$500 of the residue of the $15,500 bonds on special deposit in the bank, and the two lapsed legacies, or such residue thereof after payment of debts, and all other legitimate claims and charges to which they are subject, be distributed ?

The will is certainly very unskillfully drawn, but we think there is no great difficulty, by the application of the ordinary principles of construction, in getting at the intention of the testator, and the legal effect of the instrument.

In this final, or what appears to be the full account stated by the executrix, she charged herself with the amount of the inventory, and with the increased value or increment of the bonds belonging to the estate, the total amount of the inventory being the sum of $36,454.85. Upon this amount she asked and was allowed a commission of 10 per cent., making the sum of $3,645.48. This allowance of commission is excepted to by the appellants as being improper, or as excessive, under the facts of the case.

The executrix claimed and was allowed credit for $268.50 paid to the undertaker as funeral expenses; and she also claimed and was allowed as credits in her account the sum of $317 paid for a burial lot in Rock Creek Cemetery, and the sum of $575 paid for a monument placed over the grave of the deceased. These two latter sums are excepted to by the appellants as not being legally chargeable to the estate.

In making the distribution of the surplus or residue of the personal estate, after deductions of all claims and allowances and for debts paid, and for all legacies paid over or retained, the executrix took credit in her account, and in discharge of the inventory, for the household furniture, and the city of Richmond bond for $5,000; and she then makes distribution to herself of the balance, or remaining surplus of the estate, in this form: "On account of the bequest to her by the testator of 'notes and evidences of indebtedness to me;' 'deposits of currency entered on my bank book,' and other personal estate, the residue consisting mainly of United States bonds and deposits in bank, $9,218.76." This distri-

bution is excepted to by the appellants, as being without right or warrant in law.

There is also an objection made by the appellants to a sale made by the executrix of $1,500 of the United States bonds, the proceeds of which sale, it appears, were paid over to the Piles legatees, and for which they gave their receipts to the executrix.

1. We shall first examine the question as to what right and nature of interest was taken by the widow and executrix of the testator, under the will; as upon the determination of that question the other questions raised by the exceptions to the account may, to a certain extent, depend.

There can be no question but that the bequest of the particular claims mentioned and described by the testator as then depending in the courts, were specific legacies, and would have been adeemed if they had been collected in the lifetime of the testator. And so the bequests in the succeeding clause of the will whereby the testator gave to his wife "200 shares of Sutro stock and Comstock bonds; also notes and evidences of indebtedness to me, of more or less value; also deposits of currency entered in my bank book of the National Metropolitan Bank, amounting to $10,000, more or less," are of the same character as the claims bequeathed. It is very clear that this bequest did not embrace United States registered bonds. In all these bequests specific things or matters are referred to as the objects of the bequests; and if they had been disposed of or extinguished by the testator in his lifetime, the legacies would have ceased to exist as such. It has been held in repeated decisions, that a bequest of "100*l* consols now standing in my name at the Bank of England (Roper on Leg. Ch. 3), or of 100*l* consols, *part* of my stock;" (*Kirby* v. *Potter*, 4 Ves. 750; *Hays* v. *Hays*, 1 Keen, 97; *Shuttleworth* v. *Greaves*, 4 M. & Cr. 35), are specific bequests. And while a legacy is general when it is so given as not to amount to a bequest of a particular thing, yet a legacy is specific when it is a bequest of a specific part of

the testator's personal estate, which is and can be distinguished from the rest of his personal estate.   Therefore, a bequest of money to be received under a judgment or decree of court, is a specific bequest, and, consequently, not liable to abate with general legacies; and as a result of this principle, if the fund out of which such bequest is payable fails, or should for any cause prove to be insufficient to fulfill the bequest, the legatee must suffer the loss.   *Chase* v. *Lockerman*, 11 Gill & Johnson, 186.   If, therefore, a thing or subject-matter be bequeathed in a will by such description as to distinguish it from all other things disposed of by the will, so that it does not remain at the death of the testator as property embraced in any other bequest made by the will, it is a specific legacy, as distinguished from a general legacy; and the legatee is entitled to the very thing bequeathed if it be possible for the executor to deliver it to him, with all interest or dividends received; but if it can not be delivered, he can have no claim for compensation in money in lieu of the specific thing bequeathed by the will.   But, as a distinguishing quality of a specific legacy, and one that gives it preference over other legacies, it must be paid or retained by the executor, while general legacies may be applied to the payment of debts of the estate of the deceased.   Specific legacies must be paid or retained by the executor in preference to those which are general, and must not be sold or otherwise applied for the payment of debts or other charges against the estate until the general assets of the testator's estate are exhausted.   But while it enjoys this quality of preference or exemption, it is liable to be adeemed by the act of the testator in his lifetime; and this liability to ademption is a fair test of the character of the legacy itself.

According to the principles just stated, all the legacies, including those given to the wife, except the pecuniary legacy of $500, directed to be allowed to Mrs. Hemenway, are specific legacies; and therefore such legacies do not of course embrace the after-acquired United States bonds, or lapsed

legacies, or any other personal estate or funds of which the testator died possessed; but such estate or funds make up the residue of the estate, which is subject to be applied to the payment of debts, legacies and charges of all kinds, and expenses of administration, to which the estate is liable, to the exoneration of the specific legacies.

But though there is no residuary clause in the will, and the specific legacies do not embrace or exhaust the entire personal estate, the testator did not die intestate as to this residue or surplus, remaining after payment of debts, and any legacy not otherwise provided for, and all the charges and expenses to which the estate was liable. Such surplus or residue devolved on his executrix. And the next question is, what interest did she take in it, if any, other than that of mere executrix for purposes of administration, and how and where is she to account for and distribute this undisposed-of surplus or residue?

It is contended on behalf of the widow and executrix, that this surplus or residue, undisposed of by any express provision of the will, is by law vested in her as executrix; and that the orphans' court, or the special term of the Supreme Court exercising the jurisdiction of the orphans' court, under the Testamentary Act of 1798, Ch. 101, has no jurisdiction or power over the subject of this undisposed-of residue; and if distribution thereof is to be made, it can only be made and enforced by a court of equity, in the exercise of its jurisdiction in respect to implied or constructive tests. But to this contention we can not for a moment yield our assent.

It is true, according to the English testamentary system, *at law*, it had been the rule from the earliest period, that the whole personal estate devolved on the executor, and if, after payment of the funeral expenses, testamentary charges, debts and legacies, there should be any surplus, it would vest in the executor *beneficially*. In equity, however, while the rule was *prima facie* the same as at law,

yet, it was held in many cases, that the general rule *at law* should be controlled *in equity* in all cases where a necessary implication or strong presumption arose that the testator meant to give *only* the office of executor, and not the beneficial interest in the residue.   2 Wms. Executors, 1263, 1264, where the cases are compiled.   This rule remained unchanged in England until the year 1830.   In all such cases the executor was considered as a trustee for the next of kin of the testator, the trust to be declared and enforced by a court of equity, the theory being that the English ecclesiastical courts had no jurisdiction over such trusts, or, as said in one of the cases, "but a lame jurisdiction."   *Pamplin* v. *Green,* 2 Cha. Cas. 95; *Matthews* v. *Newby,* 1 Vern. 133, 134.   And in stating the origin and growth of the jurisdiction in equity, in engrafting a trust upon the legal estate devolved upon the executor, Lord Chancellor Hardwicke, in *Southcot* v. *Watson,* 3 Atk. 227, 228 (in 1745), said that, "ever since the case of *Foster* v. *Munt,* 1 Vern. 473, before Lord Chancellor Jefferies (in 1687), which underwent various fates, the doctrine established in this court has been that where a man makes a will and 'an executor, *and gives him a legacy,* he is to be considered as a trustee merely for the next of kin, upon an equity founded on the Statute of Distribution."   This doctrine of a court of equity in raising a trust in favor of the next of kin was introduced in order to overcome what was regarded as an unjust and inequitable result of allowing the executor to take the beneficial interest in the residue to the exclusion of the next of kin. In some of the early cases it was held that where the wife of the testator was made executrix, and there was a surplus or residue undisposed of, she would take *beneficially,* upon consideration alone of being wife.   This was so held in the case of *Ball* v. *Smith,* 2 Vern. 675; and in the leading case of *Farrington* v. *Knightly,* 1 P. Wms. 544, 549, before Lord Chancellor Macclesfield.   The chancellor, in stating his first impressions of that case, said: "An executor, from his name,

is but a trustee, he being to execute his testator's will, and therefore called an executor. In the present case the testator is not to be looked upon as dying intestate, but to have made the executor a trustee of the surplus; and this is the reason why the spiritual courts can not compel a distribution, *because they can not enforce the execution of a trust.* Indeed, in the case of a wife it has been held that where she is executrix *and has a legacy,* and there is no disposition of the surplus, she shall have it; but I do not hear any precedents cited that go further." This was said by the chancellor in giving his first impressions of the case; but, upon further examination and consideration, he held, and produced several precedents to show, that the wife being the executrix made no difference, and that where she *took a legacy under the will,* she should be decreed to make distribution of the surplus among the next of kin. 1 P. Wms. 550, and the cases cited, and the note to that case by Mr. Cox. And in speaking of the reason of the rule, the chancellor said: "That as to the reason of the case, it was most plain, the making a person executor ought not to amount to a gift of the testator's personal estate; it was no more than making him a trustee, the very word executor importing, *ex vi termini,* that he was only appointed to execute the will, and to have nothing but the management of the personal estate."

The question of the right of executors to appropriate to themselves the undisposed-of surplus or residue of the personal estate of their testators gave rise to much perplexing and expensive litigation, and the state of the law upon the subject became very unsatisfactory, and was frequently the subject of severe animadversion by the equity judges. See cases of *Urquhart* v. *King,* 7 Ves. 225, and *Pratt* v. *Sladden,* 14 Ves. 193, 197. And to correct what was conceded to be an unjust and unsatisfactory state of the law upon this subject in England, the Statute of 11 Geo. IV and 1 Wm. IV was passed. By that statute it was declared that any person

appointed an executor shall be deemed by the courts of equity to be a trustee for the person or persons (if any) who would be entitled to the estate under the Statute of Distributions, *in respect of any residue not expressly disposed of,* unless it shall appear by the will or codicil that the person so appointed executor was intended to take such residue beneficially.

The principle that obtained in the English law prior to the passage of the statute just referred to never had force or recognition in the jurisprudence of Maryland, and, consequently, it never had force or recognition as any part of the law of this District. Indeed, we think we are justified in stating that such principle never formed part of the American law; and hence Mr. Justice Story was well warranted in laying it down as clear that "in America the surplus is by law universally distributable among the next of kin, in the absence of all contrary expressions of intention by the testator." 2 Sto. Eq. Jur., Sec. 1208.

The executor, as is well understood, derives his title as executor from the will of the testator, but he takes no beneficial interest in the undisposed-of surplus or residue of the personal estate, by mere implication or construction, as by the former English rule. It is true every executor is, in a certain sense and to a certain extent, a trustee for all persons interested in the preservation and distribution of the personal estate of the testator, and he is equally so in respect to the surplus or residue of the estate undisposed of by the will, as of any other portion of the estate. He takes the estate under the will for purposes of administration, and of distribution to those entitled; and while a court of equity has a long-established jurisdiction in all matters of trust, of account, of administration, and of construction, in the settlement of estates, yet such jurisdiction is not exclusive of the very ample jurisdiction conferred on the orphans' courts of Maryland, and the special term of the Supreme Court of this District for orphans' court business, by the Testamentary

Act of 1798, Ch. 101. That act embodies in its various provisions a testamentary and administrative system, intended to be complete in itself. It is by no means limited and restricted, in the general scope of jurisdiction conferred on the orphans' court, to the limited powers and jurisdiction of the spiritual courts of England, as formerly exercised, in respect to testamentary matters. The title of the act plainly indicates its general scope and policy. The title is "An act for amending and reducing into one system, the laws and regulations concerning last wills and testaments, the duties of executors, administrators and guardians, and the rights of orphans and other representatives of deceased persons." In an act so comprehensive as that of 1798, intended to embrace the whole law of administration of decedent's estates, if it had been the intention of the legislature to exclude the jurisdiction of the orphans' court in respect to the surplus or residue of the personal estate of the deceased, undisposed of by his will, and to confide that jurisdiction exclusively to a court of equity, and thus, in such case, to divide the administration between the two tribunals, we should certainly find some provision in the statute relating to such an exception from the jurisdiction of the orphans' court. But nothing of the kind appears in the act. The only provision to be found in the act that has reference to the right or interest of the executor in the residuary estate of the deceased, is found in Sec. 6, Subch. 9. By that section, if the executor be a *residuary legatee,* he may be excused from returning to the court an inventory or account, upon giving bond for the payment of all debts and claims against the estate, and for the payment of all legacies given by the will. But it is very plain that this provision contemplates the case of an express residuary bequest to the executor, and not a right to such residue or surplus undisposed of, arising alone by implication or construction of law.

An inference is sought to be drawn, and as showing that the orphans' court was not intended to take cognizance

and make distribution of such residue or surplus, from the fact that in the Subch. 11, and the sections of that sub-chapter, providing for the distribution of an intestate's estate, the word "executor" does not appear. But that fact can furnish no material inference in support of the contention of the appellee. There is no lack of provision in the act conferring power and jurisdiction upon the orphans' court to make and enforce distribution of the residue of a testator's estate which has not, by any express terms of his will, been disposed of; the power and jurisdiction of that court being ample to superintend and direct full and complete administration of as well the estates of testators as those of intestates. By Sec. 1 of Subch. 15, the orphans', court is instituted "for the purpose of taking the probate of wills, granting letters testamentary and of administration; *directing the conduct and settling the accounts of executors* and administrators, securing the rights of legatees, superintending the distribution of the estates of intestates, securing the rights of orphans and legatees, *and administering justice in all matters relative to the affairs of deceased persons, according to law.*" And further, by Secs. 6 and 10 of Subch. 10, relating to the duties of executors and administrators, it is, by the first of these sections, provided, that it shall be the duty of an executor, upon the settlement of his account showing that all debts and claims are paid, to deliver up the estate in his hands to those entitled to receive it; and by the next of these sections, it is made the duty of an administrator, upon the settlement of his account, showing the debts and claims all to be paid, to deliver up and distribute the surplus or residue of the estate as therein directed. And by section 12 of Subch. 15, among other things, it is provided, that "The orphans' court shall have full power, authority, and jurisdiction, to examine, hear, and decree upon, all accounts, claims, and demands, existing between wards and their guardians, and between legatees, or persons entitled to any distributable part of an intestate's estate, and

executors and administrators, and may enforce obedience to, and execution of, their decrees, in the same ample manner as the court of chancery may."

These provisions of the statute are certainly ample to confer authority and jurisdiction upon the orphans' court, or the special term of the Supreme Court exercising the jurisdiction of the orphans' court, to direct and enforce the distribution of the undisposed-of residue of the personal estate of the testator, in this case; and we are clearly of opinion, that the executrix, the widow of the deceased, did not take, by any construction of the will, any beneficial right or estate in such undisposed-of residue, as distinguished from her title merely as executrix; and that such undisposed-of residue must be distributed to the next of kin of the testator.

2. The next question is that raised by the exception to the allowance of the commission to the executrix.

It is objected in the first place, that no allowance of commission should have been made, because the specific bequest of the city of Richmond bond, for $5,000, was bequeathed by way of compensation for all trouble and services to be rendered by the executrix in the administration of the estate; and in the second place, if such specific bequest was not intended as such compensation to the executrix, the rate of commission allowed was excessive and unreasonable.

We are of opinion that neither of these objections can prevail. The bequest of the Richmond bond was to "my wife and executrix," without other designation, but nothing to indicate that it was given by way of compensation, and to be taken in lieu of commissions. The descriptive words used to designate the legatee were entirely natural and proper, and were clearly intended as mere *descriptio personæ* of the legatee; and if the wife had failed to obtain letters testamentary, she would, doubtless, have taken the legacy, notwithstanding her failure to become executrix by qualification. This legacy, therefore, can not be treated as compensation in the place and stead of the commission allowed

by law. The terms of the bequest will not bear any such construction.

Nor can the objection that the rate of commission is excessive and unreasonable be available to the appellants on this appeal. The statute, by its terms, declares that the commission to be allowed to the executor or administrator shall be, *at the discretion of the court,* not under 5 per cent. nor exceeding 10 per cent. on the amount of the inventory or inventories, excluding what is lost or hath perished." Act 1798, Ch. 101, Subch. 10, Sec. 2. This provision of the statute, having fixed a minimum and a maximum rate of commission to be allowed to executors and administrators, and vested a discretion in the orphans' court, restricted only by those limits, an allowance by that court, or the court exercising its powers and jurisdiction, within those limits, is conclusive, and therefore not the subject of review in an appellate court. This has been uniformly held by the Court of Appeals of Maryland, in cases where this question on this statute has arisen. *Wilson* v. *Wilson,* 3 G. & J. 20; *Gwynn* v. *Dorsey,* 4 G. & J. 453; *McPherson* v. *Israel,* 5 G. & J. 60; *Thomas* v. *Frederick Co. School,* 9 G. & J. 115. The court below was therefore clearly right in overruling the exception to the commission allowed the executrix.

3. Then, as to the exceptions to the allowance for the price paid for the cemetery lot in Rock Creek Cemetery, at this city, and the price paid for the monument placed over the grave of the deceased. The statute provides for the allowance for funeral expenses of the deceased, at the discretion of the court, not to exceed $300. In this case $268.50 were paid the undertaker as funeral expenses. The allowance made of $317 for the lot in the cemetery, and $575 for the monument placed on the lot, are charged and allowed as distinct claims for expenditure incurred for the interment of the deceased. If this were a case where creditors were prejudiced by the allowance of these expenditures, or even lega-

tees whose legacies were lessened by the allowance, the exceptions might receive different consideration.

But this is not such case. The case here is one where the deceased has left a considerable estate, but no children or descendants; and his estate goes to his surviving wife and certain collateral relations. He occupied in life a respectable position in society, and was entitled at his death to such funeral obsequies and respectable interment as accorded with his position and circumstances in life. He was entitled to be buried in the cemetery, and to have his grave marked and distinguisbed with such monument as is customary with persons of his position and estate. To inter his body in a cemetery, the usual place of interment, it was necessary that a lot should have been purchased, and improved, and distinguished by a suitable monument, to make it conform to its environment, at least to a certain degree. The expenses incurred for these purposes were not strictly funeral expenses; certainly not within the sense and meaning of the provision of the statute, which limits funeral expenses to an amount not to exceed three hundred dollars. It does not appear that there was any extravagance in the expenditure for these objects, and we can not say that there was error in allowing credits for the amounts claimed in respect to them by the executrix. It would seem to be an ungracious act on the part of the exceptants, the relatives and recipients of the bounty of the deceased, to deny and object to the right of the widow and executrix of the testator to place over the grave of the latter a lasting memorial structure, at the expense of his own estate, simply because it may lessen to a small extent the amount of distribution that they would otherwise receive. If it were shown that such expenditure was extravagant, and for inappropriate objects, quite another question would be presented; but there is nothing to show any such state of case.

4. And lastly, with respect to the exception to the sale by the executrix of the $1,500 United States bonds, we think

there is nothing in the case to support the exception. If the bonds had been of denominations capable of specific delivery, and the legatees had desired such delivery, it would have been the duty of the executrix to have delivered the bonds. But it appears the legatees were content to have the bonds sold and to receive the money therefor, and they did receive the money and receipted to the executrix for it. They can not now be heard to urge an objection to the sale.

It follows, from what we have said, that the order of the court below, of the 11th of October, 1898, approving and passing the account of the executrix, must be reversed, and the cause be remanded, that the account be re-stated in accordance with the principles of the foregoing opinion; and it is so ordered.

*Order reversed and cause remanded.*