### WRIGHT v. HARNED et al.

(Court of Civil Appeals of Texas. Galveston. Jan. 20, 1914. Rehearing Denied Feb. 5, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 214*)— CLAIMS—BURIAL EXPENSES.

A person, who was in the company of a man at the time of his sudden death, caused his body to be taken in charge by an undertaker who later, but before he had provided a casket, was informed by a kinsman of the wife of the deceased that she desired the body to be held until she arrived. Such kinsman, assuming to act for the wife, directed that no arrangements be made other than preparing the body for burial, and later in the same day he and a temporary administrator appointed for the estate of deceased, selected a $250 casket, and directed that it be suitably draped. Later in the same day the undertaker procured a bronze casket, the price of which was $1,800, and placed the body in it, though there was no necessity for using any casket until the arrival of the wife. When the wife arrived and learned that the body had been placed in an $1,800 casket, she at once repudiated such action, and, upon the undertaker refusing to turn the body over to other undertakers unless the bronze casket be also taken, she caused both the body and the casket to be taken in charge by other undertakers, who stored the bronze casket and interred the body in a cheaper casket furnished by them. Held, that the first undertaker was not entitled to recover from the estate for the bronze casket, though the estate was worth about $300,000, and such casket was of a character and value suitable to the condition in life and financial circumstances of the deceased, and to the usages of the community in which he lived.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

2. DEAD BODIES (§ 1*)—CONTROL OF BODY— RIGHT OF WIDOW.

The widow has the right of control of the body of her deceased husband, and the first right to determine the disposition thereof and the casket in which it shall be buried, though she and deceased were estranged at the time of his death and a suit for divorce was pending, and though he may have stated to an undertaker that he wished him to take charge of his body and give it a suitable burial.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

3. EXECUTORS AND ADMINISTRATORS (§ 214*)— CLAIMS — BURIAL EXPENSES — RECOVERY FROM ESTATE.

Others than the widow or next of kin of a deceased person may lawfully incur expenses for the interment of his body, and recover the amount of such expenses from his estate, provided they are not mere interlopers and the expenses are reasonable and suitable to the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 755; Dec. Dig. § 214.*]

Appeal from District Court, Harris County; William Masterson, Judge.

Action by C. J. Wright against Eli Harned, administrator, etc., and later plaintiff filed his amended petition against Eli Harned and others. From judgment for defendants, plaintiff appeals. Affirmed.

Hutcheson & Hutcheson and Ingham S. Roberts, all of Houston, for appellant. Fisher, Campbell & Amerman, of Houston, for appellees.

McMEANS, J. The following statement of the nature and result of the suit is taken from appellant's brief:

Charles J. Wright, plaintiff below, appellant here, brought this suit in the district court of Harris county, against the defendant, Eli Harned, administrator of the estate of Frank Dunn, deceased, on September 22, 1910, to recover on a claim against the estate of said Frank Dunn aggregating $1,975.60—for a bronze casket, $1,800, for services and other things furnished, $175, alleging the presentment and rejection of all of said claims except $175.60.

The estate, in the meantime, having been closed by the delivery of the assets of same to Mrs. Sarah P. Dunn and Mrs. Annie Lee Eiche, as the persons interested therein, upon their application and bond therefor, with J. O. Eiche and J. J. Sweeney as sureties, plaintiff, on November 16, 1912, filed his amended petition against the said Eli Harned, Sarah P. Dunn, Mrs. Annie Lee Eiche and her husband, J. O. Eiche, and J. J. Sweeney, to recover on said claim, alleging as grounds of recovery: First, that all of said material and services for which said claim was made were duly furnished, and were of the kind and quality reasonably proper and necessary for the burial and funeral of Frank Dunn, and the amounts charged therefor were the reasonable value thereof; second, that same were furnished in accordance with the express wishes of said Frank Dunn, made prior to his death, that plaintiff should take charge of his remains and give him a burial, compatible with and appropriate to his position in life, from a financial standpoint, and give due honor and credit to the same in his burial and funeral, said request having been made because of the fact that the relations between the said Frank Dunn and his wife

were estranged and inimical, a divorce suit being then pending; third, that upon the death of the said Frank Dunn, the petitioner was requested to take charge of his remains, and did so, and, for the purpose of furnishing the said Frank Dunn a funeral and burial, materials, and services which were in accordance with his position in life, and in accordance with his express wishes, plaintiff, for that purpose, and under that authority, and with the intent to carry out the said expressed wish, did furnish to the said Frank Dunn a casket and burial, material, and services necessary to render him such honor and appropriate credit in said funeral; that the entire immense estate, which was more than $300,000 in value, went at his death to his said wife and his said daughter as the beneficiaries, and that it was no more than just and right that the said Dunn should have his wishes carried out with the expenditure of a small portion of said moneys on hand; that same would have been done, so petitioner is informed and believes, but for the relations of estrangement existing between the said Dunn and his wife at the time of the death of said Dunn; said petition also alleges the turning over of said estate to the defendants, Mrs. Dunn and Mrs. Eiche and her husband, J. O. Eiche, and J. J. Sweeney, sureties, and prayed that upon a hearing he be given judgment for said sum of money so due him for material furnished and services performed; said petition further alleging the presentment to the administrator and the rejection of said claim by him.

The defendants answered with general demurrer and general denial, and answered specially that plaintiff had no right to collect said sum, because he had been notified by J. J. Sweeney, temporary administrator, and others, among them the heirs of said Dunn, that they would pick out a suitable and less expensive casket for the burial of said Dunn, and that they had done so; that, notwithstanding that fact, plaintiff refused to recognize the selection so made by the said administrator, selected a more expensive casket, and placed the body of said deceased therein, and refused to take it thereout, and that said Sweeney had the body, casket, and all removed to another undertaking establishment, and if the said casket has not been taken possession of by the plaintiff, it is at said undertaking establishment subject to his order.

Plaintiff replied by supplemental petition, demurring, denying, and specially excepting that said J. J. Sweeney had any authority, as temporary administrator, to take any action in the premises in regard to the disposition of said remains, and further specially answered that, before any of the heirs or next of kin of the said Frank Dunn had given him any instructions of any kind, he had already ordered the casket and placed the body of the said Frank Dunn therein,

and that said casket became thereby appropriated to that purpose, and valueless for use by any other person.

The court instructed the jury to find. for plaintiff in the sum of $175, the amount tendered by defendant, and against the plaintiff for the $1,800 sued for as the value of the casket; and on said charge the jury returned a verdict as instructed, upon which judgment was duly entered, and from which the plaintiff, after his motion for a new trial had been overruled, has appealed.

It was admitted that the estate of Frank Dunn was worth $300,000, and the evidence showed the presentment by plaintiff of his claim to the administrator, the approval of a portion of .it, and the rejection of the balance.

On Sunday night, October 3, 1909, Frank Dunn died suddenly, while automobile riding with his friend, L. A. De Voss. De Voss called up the undertaking parlors of plaintiff Wright by telephone, and directed an employé of Wright, who in Wright's absence answered the call, to go and get the body and take it to the undertaking establishment, and these directions were carried out by plaintiff's said employé. That night, shortly after Dunn's death, P. V. Meyer, a nephew by marriage of Mr. Dunn's wife, sent a telegram to Mrs. Dunn, who at that time was in Kentucky, notifying her of the death of her husband. Early next morning plaintiff also sent a telegram to the same effect to Mrs. Dunn. Mrs. Dunn did not reply to the telegram sent by plaintiff, but did reply to the one sent by Mr. Meyer, and her reply was received by him about 7:30 o'clock Monday morning, and was as follows: "Hold body; will get there Tuesday night." Between 8 and 9 o'clock Monday morning Meyer went to the plaintiff's undertaking establishment, and exhibited to plaintiff the telegram just received from Mrs. Dunn, and told plaintiff to make no arrangements other than to prepare the body for burial. This, however, had already been done. He further told plaintiff that no arrangements had to be made until the court appointed an administrator, and that he would return in the afternoon with the administrator, and select a casket and place the body in it until the family arrived, which would be Tuesday night. In the afternoon Meyer, accompanied by J. J. Sweeney, who in the meantime had been appointed temporary administrator of Frank Dunn's estate, returned to the undertaking parlors, and together selected a casket, the price of which was $250, and directed that it be suitably draped. Later in the afternoon plaintiff ordered by telegraph a bronze casket from Dallas to be sent to Houston by express, the price of which was $1,800, and this casket reached Houston on Tuesday morning, and the body of Frank Dunn was placed in it by plaintiff. Later in the day Mr. Meyer again went to

the undertaking parlors, and then discovered that the body of Mr. Dunn had been placed in the bronze casket, instead of the one that had been selected by himself and the administrator, and asked Mr. Wright for an explanation. Mr. Meyer testified that, in response to this: "Mr. Wright first told me it was none of my business; that he did not intend to stand by and see a man of Frank Dunn's prominence in the city of Houston buried in a casket such as we selected; that he was entitled to a sweller funeral than the one we intended to give him."

Mrs. Dunn reached Houston Tuesday evening, and, learning of Mr. Wright's action in placing the body of her deceased husband in an $1,800 casket, at once repudiated such action, and directed Earthman & McCarty, rival undertakers, to take charge of the body. This firm presented to plaintiff an order signed by Mrs. Dunn, directing him to turn the body over to them, but plaintiff refused to let them have the body unless the bronze casket should be taken also, and finally, in order to obtain the body, Earthman & McCarty, acting under the orders of Mrs. Dunn, took both the body and the casket, and removed same to their own undertaking establishment, where the body was removed from the bronze casket and placed in one selected by or at the request of Mrs. Dunn, and in this casket the body was interred. The bronze casket was then stored in the warehouse of Earthman & McCarty, where it now is. The effect of placing the body in the bronze casket was to make the casket secondhand, and this would render it hard to sell, and would greatly depreciate its market value. The bronze casket furnished by plaintiff was one such as was proper to be furnished for a man of the means and condition in life of Mr. Dunn. Mrs. Dunn did not authorize any one to select a casket until she arrived in Houston. Mr. Dunn died intestate, and his widow and married daughter, Mrs. Eiche, are his only heirs.

[1] Appellant by his first assignment of error complains that "the court erred in peremptorily charging the jury to find against his claim for $1,800 for the bronze casket, because there was evidence that the said casket was furnished under proper circumstances and conditions, and was of the character and value suitable to the condition in life and the financial circumstances of the deceased, and the plaintiff was entitled to have the jury pass upon the question, in the light of the facts and circumstances in evidence whether the action of the plaintiff in regard to furnishing said casket was proper, and what amount should be allowed plaintiff therefor." The second assignment presents the same questions in slightly different form. Appellant asserts by his first proposition under the assignments that the question of the amount to be allowed for funeral expenses is one which is determined by the posi-

tion of the deceased, the amount of his estate, the usages of the community in which he lived and other considerations which legitimately enter into the questions of rendering to the deceased a just and proper disposition of his remains. The soundness of this proposition may be conceded, but it furnishes no reason, under the facts of this case, for disturbing the judgment rendered upon the instructed verdict. The second proposition is, in effect, that it is not necessary, in order to entitle a person to recover for services rendered or supplies furnished for the funeral of a decedent, that he should have been requested to furnish the various supplies which he did furnish by the next of kin of the deceased; that it is only required that he should, under proper circumstances, have performed the services and furnished the material, and that the matter of the amount to be allowed him therefor is a question for the court or jury, under all the circumstances of the case. With certain qualifications the soundness of this contention also may be conceded.

[2] Appellant concedes that the law accords to the widow or next of kin the right of control of the remains of a deceased person, and the first right to determine the disposition thereof. This right is given by law, and is a right superior to that of any other person when the widow or next of kin assumes to act in relation to the disposition of the remains of the deceased.

[3] It is true that others than the widow or next of kin may lawfully incur expenses for the proper interment of the dead, and recover for that expense the amount thereof, provided he is not a mere interloper, and provided the expenses are reasonable and suitable to the estate of the decedent. Cape Girardeau Bell Telephone Co. v. Hamil, 160 Mo. App. 521, 140 S. W. 954. This principle seems to have been recognized by the court below, because the expenses incident to the proper preparation of the body of deceased for burial, including embalming, was allowed, and rightly so. Frank Dunn's body was carried to plaintiff's establishment at the request of his friend, with whom he was riding when he died. His widow and only child were in Kentucky, and, no one else having authority, assumed to dictate how the body should be prepared for burial. In these circumstances plaintiff undertook to prepare the body, including embalming, and in doing so incurred expenses to the amount of $175, which, conceding the reasonableness of the charge, as to which appellees made no question, was a proper charge against the estate of the decedent, and was properly allowed. But did he have the right to charge the estate with the value of the bronze casket in the circumstances in which it was furnished? Before he had taken any steps towards selecting a casket, and more than a day before he actually furnished it, he knew that Mrs. Dunn had been informed of

her husband's death, and that she had instructed her kinsman to hold the body, and that she would reach Houston Tuesday night; he knew that this same kinsman, assuming to act for Mrs. Dunn, had selected a casket, and, knowing these things, ordered by telegraph the casket from Dallas to be ·sent by express, and that it could not reach Houston until Tuesday, the day Mrs. Dunn was to arrive. The law implies a promise ·of reimbursement from the estate to one who, in the absence or neglect of the next of kin, not officiously, but in the necessity of the case, directs a burial and incurs and ,pays such expense thereof as is reasonable. Patterson v. Patterson, 59 N. Y. 583, 17 Am. Rep. 384. But was the act of plaintiff in furnishing the bronze casket done in the necessity of the case? The body had already been embalmed, and its preservation secured in this way, and the placing of it in the casket did not aid in its further pres-·ervation. The interment could not take place until after Tuesday, because Mrs. Dunn had instructed that the body be held, and she ·could not reach Houston until that night. In these circumstances we think that the act of plaintiff in ordering the casket and placing the body therein, after knowing the facts above detailed, and further knowing, or if not knowing, evidently from his testimony and from the allegations of his petition, believing, Mrs. Dunn would not, had she been in Houston, have selected such an expensive casket, and that she would object to the use ·of it, was not an act of necessity; that it was officious is shown by the statement made by him to Mr. Meyer, that it was none ·of his, Meyer's business, and that he did not intend to·stand by and see a man of Frank Dunn's prominence buried in a casket such .as had been selected. The necessity for placing the body in a casket before the arrival ·of Mrs. Dunn was not urgent; and, when plaintiff was informed that Mrs. Dunn would ·come to Houston immediately, he should have assumed that she would direct the final disposition of the remains, including the selection and purchase of the casket in which she desired he should be buried, and the expenses thereafter incurred by plaintiff in ordering the casket and placing the remains therein were incurred at his own risk. Of course, if his acts had been ratified by the widow upon her arrival, the estate would have been charged with the reasonable value of the casket, but they were not ratified, but repudiated, and the widow, exercising her legal rights, made selection of the casket in which her husband's remains were interred. It is proper to say, we think, that plaintiff in acting as he did was actuated only by the ·desire to see that his dead friend was given .a funeral commensurate with the financial ·circumstances and condition in life of the de-

ceased, and in accordance with his request, but the next of kin in this case, who, by the death of the deceased came into the control of a fortune of $300,000, had the right to say that he should have a less elaborate funeral, and they had the right to repudiate those things done by plaintiff, not under stress of necessity, and without lawful authority. What we have said above sufficiently disposes of appellant's third proposition under the first and second assignments of error. We conclude that the peremptory charge was properly given, and the assignments and propositions thereunder are overruled.

The plaintiff offered to prove that on December 4, 1907, Mrs. Dunn filed suit for divorce against her husband, and also that on September 28, 1909, she filed another suit for divorce, and offered to introduce the original petitions in these cases in evidence. He also offered to prove that an estrangement existed between the parties, and that plaintiff knew this. He further offered to prove, by his own testimony and by the testimony of several witnesses, that Frank Dunn told plaintiff on several occasions that when he died he wished plaintiff to take charge of and inter his remains, and to furnish him a first-class funeral, consistent with his means and circumstances in life. This testimony was rejected by the court upon proper and timely objections offered thereto by appellees, and this action of the court is made the basis of the eighth, ninth, tenth, eleventh, and twelfth assignments of error. We do not think the estrangement between Mr. and Mrs. Dunn deprived the latter, upon the death of the former, of her right to dispose of the remains of her husband, nor would the fact of the divorce proceeding have this effect. She was his wife notwithstanding the estrangement and her attempt to be freed from the matrimonial relation, and, as such, had the rights of a widow or next of kin in the disposition to be made of the remains. The fact that Mr. Dunn had expressed to plaintiff the wish that when he died plaintiff should take charge of his body and give it suitable burial is entitled to great weight in considering plaintiff's good faith in doing what he did (Pettigrew v. Pettigrew, 207 Pa. 313, 56 Atl. 878, 64 L. R. A. 179, 99 Am. St. Rep. 795), but is not controlling as against the wife's superior right to control the interment. In this view we think there was no error in rejecting the proffered testimony, and the assignments are overruled.

We have carefully examined all of appellant's assignments of error, and are of the opinion that no reversible error is pointed out in any of them. We think the judgment should be affirmed, and it has been so ordered. Affirmed.