## CAPE GIRARDEAU BELL TELEPHONE COMPANY, Respondent, v. J. A. HAMIL, Administrator, Appellant.

**St. Louis Court of Appeals. Argued and Submitted October 10, 1911. Opinion Filed November 7, 1911.**

1. **EXECUTORS AND ADMINISTRATORS: Funeral Expenses: Priority.** A claim for funeral expenses, if legally exhibited against decedent's estate within a year after the granting of the first letters on the estate, is entitled to priority over all the other claims, but, if not exhibited until after the expiration of a year and within two years, it is only allowable as a claim of the sixth class, as provided by section 190, Revised Statutes 1909.

2. ———: ———: **Payment by Third Person: Right of Recovery Against Estate.** A third person who is not a mere interloper may lawfully incur expense for the proper interment of decedent's body and recover the amount thereof against decedent's estate, provided it was reasonable and suitable to decedent's estate; but a mere interloper may not recover.

3. ———: ———: **Payment by Decedent's Employer: Right of Recovery Against Estate.** Where decedent, while working for a telephone company, was killed by a fall from one of its poles, and its auditor, who was present at the time, directed an under-

taker to care for the body and furnish such things as were requisite for the funeral, and the family and administrator of decedent knew these facts at the time the undertaker furnished such requisites, the company, in paying such expenses, was neither an interloper nor a mere volunteer, and therefore was entitled to recover the amount so paid, if reasonable and not a mere gratuity, as a claim against decedent's estate, independent of any question of subrogation to the rights of the undertaker or of an assignment of his claim.

4. **ASSIGNMENTS: Validity: No Consideration.** Where a workman was killed while engaged in the performance of his work, and his employer directed an undertaker to care for his body and furnish such things as were requisite for the funeral, an attempted assignment, without consideration, of the undertaker's bill by the undertaker to the employer, subsequent to the latter's payment of it, was of no effect as an assignment.

5. **PROBATE COURTS: Practice.** Cases are to be determined in the probate court on the real facts, and matters of form and technicalities are not important.

6. **APPELLATE PRACTICE: Conclusiveness of Finding of Facts.** Findings of fact by the trial court which are supported by competent evidence are conclusive, on appeal.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. R. G. Ranney,* Judge.

AFFIRMED.

*L. L. Bowman* and *Frank Kelly* for appellant.

*Oliver & Oliver* for respondent.

REYNOLDS, P. J.—Plaintiff below, respondent here, within two years, but more than one year after letters granted, exhibited an account for allowance against the estate of T. J. Hamil, deceased, claiming that it had paid the undertaker for the funeral expenses of Hamil, who had been an employee of respondent, and had taken an assignment of the undertaker's bill, which bill it exhibited to the Court of Common Pleas of Cape Girardeau county, that court having probate jurisdiction. The account was allowed in

favor of plaintiff and placed in the sixth class. Where-upon the administrator appealed to this court.

The case was afterwards transferred by us to the Springfield Court of Appeals in accordance with the provisions of an Act of the General Assembly of this state, approved June 12, 1909 (Laws 1909, p. 396, now section 3939, R. S. 1909), and the judgment of the Court of Common Pleas reversed. The statement and opinion of the Springfield Court of Appeals will be found in 153 Mo. App. 404, 134 S. W. 1103. The cause came back to us from the Springfield Court in conse-quence of the decisions of the Supreme Court that the act above referred to was unconstitutional and all pro-ceedings had under it void. [See State ex rel. St. Louis Dressed Beef & Provision Co. v. Nixon et al., 232 Mo. 496, 134 S. W. 538, and cases *passim*.] It has been argued and submitted to us.

It appears that one Thomas H. Hamil, a son of defendant, was an employee of plaintiff and was killed while at work for plaintiff, by coming in contact with a live wire, part of the telephone system operated at Cape Girardeau by plaintiff, respondent here. His body appears to have fallen at the foot of one of the telephone poles of the company plaintiff. While the body was lying there, the auditor of plaintiff, who was then present, directed an undertaker to go ahead and take care of it and that the telephone company would see to the payment of the bill. The undertaker there-upon went to the former home of the deceased and showed pictures or drawings of caskets and a selection of a casket was made either at the house or at the undertaker's store. The undertaker furnished the casket, embalmed the body, furnished a burial suit and also the hearse that was used at the funeral, the total amounting to $127. There is evidence in the case that Mr. Bowman, one of the attorneys for defendant, who was a friend of the deceased and who had been re-quested by the family to select a casket, is the person

who selected the casket furnished and that he told the undertaker to charge it to the estate. There is, however, no evidence that plaintiff then knew of this latter fact. The undertaker appears to have made out the bill against plaintiff. Within about a month following the funeral, plaintiff paid the bill to the undertaker. It appears that afterwards Mr. Bowman, on behalf of the estate, went to the undertaker's establishment to pay the bill, and asking about it, was told that it had been paid by plaintiff. Mr. Bowman testified that he informed the auditor of plaintiff company that the administrator was ready to pay the bill and to send it to him. This was about a month and a half after Mr. Bowman learned that the bill had been paid. There is also evidence to the effect that in conversation with the representatives of the company plaintiff, the administrator was told that the funeral expenses had been paid. The administrator also testified that he had never been asked to pay this bill. It is in evidence that about the time plaintiff paid this funeral bill, its representative told the undertaker that if the family of the deceased offered to pay the bill, to accept payment from them. The undertaker testified that while nothing was said about it, his understanding was that if he did this, that is collected for the same bill from the family or the administrator, he would pay the money over to the telephone company. After letters of administration had been taken out, the administrator instituted an action against the telephone company for damages for the death of his son Thomas and recovered a judgment, which judgment the telephone company paid off. Afterwards the telephone company took what purports to be an assignment of the account from the undertaker and, as stated, exhibited this account for the funeral expenses for allowance against the estate of the decedent.

The cause was heard before the judge of the Cape Girardeau Court of Common Pleas, a jury having been

waived, and the account was allowed by that court and classified as a demand in the sixth class. It is from this judgment allowing the claim that this appeal has been prosecuted.

From the beginning of legislation in our state, funeral expenses of a decedent are given priority over all other claims, not even excepting the expenses of last sickness, debts including taxes due the state, the county or a municipality, judgments, and all demands, without regard to quality, which should be legally exhibited against the estate within one year after the granting of the first letters on the estate. All demands, including funeral expenses, exhibited after the end of one year and within two years after letters are granted are placed in the sixth class. [See R. S. 1909, Sec. 190; Walley & Rollins v. Gentry, 68 Mo. App. 298.] As it appears beyond question that this demand was not exhibited within one year and apparently was exhibited within two years, after the granting of the letters, it lost its classification in the first class and would be remitted to the sixth clause. While funeral expenses are by this provision of law pretermitted from classification in the first class, the obligation of the estate for them is in no degree affected. The whole spirit of our law proceeds upon the theory that they are charges which the estate of the decedent—if he has any—must bear. The probate court is commanded, on final settlement, to allow "all reasonable charges for funeral expenses." [R. S. 1909, Sec. 229.] Independent of any statute and at common law, "Funeral expenses," says Lord Coke, "according to the degree and quality of the deceased, are to be allowed of the goods of the deceased, before any debt or duty whatsoever." [2 Williams on Executors, top page 165, *p. 835 (9 Eng., 7 Am. Ed.); 2 Woerner Am. Law of Administration (2 Ed.), *p. 759, foot page 821.] From the very nature of the thing, funeral expenses are not of the character of debts of the de-

ceased, for they accrue after his death, yet from very necessity proper funeral expenses are the first charge upon the assets in the hands of the executor or admin-. istrator, being preferred at common law. So our statute treats them, unless the claimant, by his own laches, has neglected to exhibit them within the period prescribed.

Says the Supreme Court of North Carolina, treating of funeral expenses and quoting other cases, in Ray v. Honeycutt, 119 N. C. 510, l. c. 512: "They bind the assets, independent of any promise by the executor or administrator, to the extent that they are proper to the estate and rank in life of the deceased." They are more in the nature of charges upon the assets in the hands of the personal representatives than as debts against the estate.

In Patterson v. Patterson, 59 N. Y. 574, l. c. 583, and following, it is said that the law implies a promise, on the part of the executor, to pay one who, in the absence or neglect of the executor, from the necessity of the case, incurs and pays such expenses. In this case Judge Folger, who delivered the opinion of the court, quoting Patterson, J., as holding in Brice v. Wilson, 3 N. & M. 512, that "there is no case which goes the length of deciding that if the funeral be ordered by another person, to whom credit is given, the executor is liable," quotes the same judge in Green v. Salmon, 8 Ad. & Ell. 348, as limiting this to mean that the executor is not liable to the undertaker where credit had been given to another, and that "if it lays down more, the law stated is extrajudicial." In 3 William on Executors, supra, top page 302, *pp. 1679 to 1681, that recognized authority, at page 304, says, referring to Brice v. Wilson, supra: "But the learned judge, in this case, probably intended to lay down no more than that the executor, where credit has been given to another person, is not liable to the undertaker; for it should seem, that if the person, who

gives the order for the funeral, pays for it, he may
have an action against the executor for the reasonable
expenses.''

In Patterson v. Patterson, supra, Judge Folger
calls attention to the fact that the expenses of probate
of the will precede the formal authority to the execu-
tor, but are always allowed to him on an accounting.
He continues (l. c. 585): ''So should funeral expenses
be. The decent burial of the dead is a matter in which
the public have concern. It is against the public
health if it do not take place at all, . . . and against
a proper public sentiment, that it should not take place
with decency. . . . The Revised Statutes, already
cited, impliedly give discretion that the executor, even
before probate, shall pay the funeral charges; and not-
withstanding the statute setting out the order of pay-
ment, if he follows that direction or that authority,
the amount will be allowed to him as part of the ex-
penses of his trust, with the restriction always that
the amount is no greater than is necessary. And if
they are paid by another than the executor, and reim-
bursed by or collected of the latter, there must be the
same result.''

In McClellan v. Filson, 44 Ohio St. 184, l. c. 187,
the case of Patterson v. Patterson, supra, is referred
to and quoted from very fully and approvingly. In
McClellan v. Filson, supra (l. c. 189), the court quotes
approvingly the language of Judge Cooley, in Sears
v. Giddey, 41 Mich. 590, where that eminent judge
says: ''A funeral cannot be delayed for judicial in-
quiries to determine upon whom the moral obligation
to proceed with it rests most heavily.''

In Dampier v. St. Paul Trust Co., 46 Minn. 526,
Judge Collins (l. c. 527) states it as the settled law
of this country, as well as of England, ''that an exec-
utor or an administrator, having sufficient assets in
his hands, is liable upon an implied promise to a third
person who, as an act of duty or of necessity, has

provided for the interment of a deceased person, if the funeral was conducted in a manner suitable to his station in life, with proper reference to the means of the estate, and the charges are fair and reasonable." Judge Collins quotes many authorities in support of this proposition.

The Supreme Court of Maine, in Fogg v. Holbrook, 88 Me. 169, says (l. c. 172), referring to funeral expenses as charges against the estate of a decedent, "when such expenses are incurred, necessarily after the death of a person, there is no one legally authorized to represent the estate. The service must be rendered and necessary articles furnished immediately; it is better that these things should be done upon the credit of the estate, than that there should be hesitation and inquiry as to who is liable to pay."

In France's Estate, 75 Pa. St. 220, l. c. 225, it is held that where parties other than the administrator or executor discharge the duties connected with the burial of the deceased, and that "when they do properly discharge them, and incur and pay the necessary expenses, without objection on the part of the executor, his assent must be presumed, and the estate be held liable for the amount paid." As applicable to the facts in the case at bar, it is also to be noted that the Supreme Court of Pennsylvania further says in that same case (l. c. 225 and following): "Nor does the fact that the widow said to a stranger, she did not intend any one else to pay the expenses, and that she did it voluntarily out of respect to her husband, constitute any bar to her right to recover them."

In Sullivan v. Horner, 41 N. J. Eq. 299, where a very full consideration of English and American cases and of text-writers will be found, it is said (l. c. 300): "An executor is bound to provide for his testator decent and appropriate Christian burial. Not only do the usages and necessities of society require this at his hands, but it is the requirement of the law also.

. . . Decent Christian burial is part of the individual rights of every one. The estate in the hands of the executor or administrator is bound by law for the payment of the expenses of the decent interment of the decedent, and the executor or administrator, if he have sufficient assets, is liable upon an implied promise to another person who, as an act of duty or necessity, has provided for the interment, if the funeral was conducted in a manner suitable to the rank in life of the decedent, and the charge is fair and reasonable." Further along (l. c. 302), it is said: "From an early day it has been held that a stranger who furnished a funeral for a decedent does not thereby make himself executor *de son tort.*"

From these cases it will appear that an outsider, one other than the administrator or executor, may lawfully incur expenses for the proper interment of the dead and recover for that expense the amount thereof, provided he is not a mere interloper, and provided the expenses are reasonable and suitable to the estate of the decedent. There is no pretense in the case at bar that these expenses of the funeral were unreasonable or out of proportion to the estate of the decedent.

Applying the principle announced in them to the facts in the case at bar, it is in evidence in this case that the administrator and family of the decedent knew of the fact that the undertaker was furnishing the casket and doing the other matters for which the charge is made, at the instance and on the credit of plaintiff. It is in evidence that the administrator, after his appointment, knew of the fact of the payment of this bill by plaintiff. His attorney testified he stood ready to pay it. There is not a particle of evidence that he at any time prior to this action repudiated it or that any of the family of the decedent made any objection whatever to it.

160 App.—34

It is true that in the case at bar the so-called assignment from the undertaker to plaintiff is without consideration and, as an assignment, is of no force or effect. But this is a proceeding before the probate court, where matters of form or technicality are not important and where cases are to be determined on the real facts. The ultimate facts in this case are that plaintiff's right of action rests on the payment by it of this bill, that this plaintiff, employer of the decedent, seeing him dead on the street, knowing that he had met his death in its service, moved by every principle of humanity and of kindly feeling, directed the necessary arrangements for his decent burial and obligated itself to the undertaker to stand good and pay the amount thereof. Under the authorities cited the undertaker himself possibly could not have maintained this action.

There is no question of subrogation here. Plaintiff's right to recover rests on the fact that it is the one who paid these funeral expenses. Irrespective of any question of assignment of account from the undertaker to plaintiff, plaintiff having paid, is entitled to recover of the assets of the estate the amount of the payment.

We are unwilling, in a case of this kind, involving the right of sepulture, to hold that one connected with another, as was the employer here, taking upon himself, in the exigencies of the case, the act of decent burial, even without an express request of the relatives or an express promise of the administrator to make him whole, cannot recover off of the estate of the decedent the amount that he has properly expended. A mere intermeddler cannot recover. [Ray v. Honeycutt, supra, l. c. 512.] But an employer, under the facts here in evidence, is not an intermeddler.

We have been referred to and have found no similar case in the decisions of our own courts, but feel warranted in the conclusion we have arrived at by the

opinions of accepted text-writers and the decisions of the courts which we have here quoted and cited, as well as by our own conception of right action.

Whether the payment by plaintiff was a mere gratuity, was a question of fact. Our Supreme Court has said, in Allen's Admx. v. Trustees of Richmond College, 41 Mo. 302, l. c. 309: "Where a party voluntarily does an act, or renders service, and there was no intention at the time that he should charge therefor, or understanding that the other should pay, he will not be permitted to recover, for that which was originally intended as a gratuity cannot be subsequently turned into a charge. . . . And whether it was intended as a gratuity, is a question of fact." It is further said in that case (l. c. 308): "It is not necessary in all cases for the plaintiff to prove an express assent of the defendant to enable the jury to find a previous request; they may infer it from his knowledge of the plaintiff's acts, or his silent acquiescence." This is reiterated by Judge WAGNER, in Hart v. Hart's Admr., 41 Mo. 441, l. c. 446, where he quotes from C. J. Shaw, in Guild v. Guild, 15 Pick. 130, to the effect "that it would be quite competent for the jury to infer a promise from all the circumstances of the case." In the case at bar the trial court must be held to have found as a fact that the payment by plaintiff was not a mere gratuity. We are bound by that finding as to that fact, it being supported by competent testimony.

The judgment of the Cape Girardeau Court of Common Pleas is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.