The Bultman Mortuary Service, Inc., an undertaking establishment, brought suit against Dr. and Mrs. Theobald R. Rudolph to recover the sum of $175 for the value of services rendered in the funeral and burial of one Mrs. Ida B. Byrne, the aunt of Mrs. Rudolph.
Plaintiff contends that the defendants "both unconditionally, clearly and unequivocally agreed to be personally responsible for the cost of these funeral operations and not merely as surety therefor". It further contends that the defendants, having taken into their possession all the belongings of the deceased, Mrs. Byrne, have, by such action, accepted the succession of the deceased, thus rendering themselves liable personally for all debts of the decedent.
Defendants denied that any contract or agreement was entered into by them with plaintiff at the time, or that they authorized the plaintiff to charge these items to them. They aver that the funeral arrangements for the deceased, Mrs. Byrne, were made and contracted for by a third person, namely, L.C. Franck, and that plaintiff, having exhausted all efforts to collect the cost incurred from diverse persons, now seeks to hold defendants liable.
After a trial on the merits, there was judgment below recognizing plaintiff's *Page 27 
claim. From that judgment defendants prosecute this appeal.
On the trial below numerous exceptions were leveled at plaintiff's petition, though the record fails to inform us as to their disposal. Defendants do not, either in brief or in argument, urge these exceptions before us, and, accordingly, we must consider them as having been abandoned.
The record discloses that Mrs. Byrne, the deceased, was the aunt of Mrs. Rudolph, there having existed no relationship between deceased and Dr. Rudolph. It is shown that L.C. Franck, who, it is alleged, contracted for the funeral arrangements in question, is not related to the defendants, but was acting purely as an adviser and financial agent of the deceased, Mrs. Byrne. The record further shows that the deceased, prior to her death, had received, as beneficiary of a life insurance policy, funds in the amount of $1,300, and there is evidence to the effect that this money was entrusted to Mr. Franck, other than amounts required for the necessities of Mrs. Byrne, to pay the expenses of last illness and the church services in connection with the burial of the deceased. It is shown that the deceased had been living as a guest at the home of defendants two months prior to her death. Mr. Franck also resided at defendants' home, his expenses for board and lodging being defrayed by the deceased. It is further shown that the relations between Mr. Franck and the defendants were most unpleasant, they not being on speaking terms. Shortly before her death, Mrs. Byrne was taken to Touro Infirmary, where she expired. Upon her death Mr. Franck immediately called at the mortuary establishment of plaintiff and there orally contracted for all funeral and burial services. Plaintiff immediately took charge, removed the body to its establishment, and furnished the materials ordered and arranged for. It is further shown that, shortly thereafter, Mrs. Rudolph, in company with a friend, a Mrs. Crane, called at plaintiff's establishment to deliver an article of wearing apparel, remaining there a few moments. Shortly thereafter Mr. Franck telephoned plaintiff corporation and repudiated responsibility for any expenses arising from the arrangements he had just previously made with plaintiff. From this point the evidence is in irreconcilable conflict. Mr. Fred A. Bultman, Jr., president and manager of plaintiff corporation, testified that all funeral arrangements were agreed upon and contracted for with Franck; that, upon the repudiation and disavowal of this verbal contract, he informed defendants, who were then in plaintiff's establishment, of this occurrence. He stated that Dr. Rudolph became incensed and accused Franck of being an interloper, with the further statement by Dr. Rudolph that "my wife is related to the deceased and we are responsible for her burial". Mr. Bultman further testified that, prior to the repudiation by Franck, Mrs. Rudolph approved and acquiesced in the arrangements so made by Franck; that, relying in good faith upon defendants' agreement to be responsible for the attending costs, he rendered the required services, the charges for which plaintiff now seeks indemnification.
Dr. Rudolph testified that he at no time agreed to hold himself responsible for any expenses in connection with the funeral services of Mrs. Byrne, and that, as a matter of fact, not a single word was exchanged between him and Mr. Bultman relating to that matter. He also testified that it was always his impression that, whatever services were being rendered by plaintiff were to be assumed and paid for by Mr. Franck, since he knew that Franck was the financial agent of the decedent.
Mrs. Rudolph testified in the same positive vein. She stated that, on calling at the establishment of plaintiff, prior to the repudiation of responsibility by Mr. Franck, and on learning of these arrangements, her affection for the deceased quite naturally prompted her acquiescence. She further stated that on no occasion did she ever agree to, or promise to assume, any responsibility in connection with the services rendered by plaintiff. In this connection she is fully corroborated by the testimony of Mrs. Crane, a friend, who was then present during the entire conversation had between the parties.
No proposition is more deeply embedded in our jurisprudence by the repeated and consistent holdings of courts of this state than that a plaintiff must establish the verity and correctness of his claim, not alone by a preponderance of evidence, but to a legal certainty. From a reading of the testimony presented, faced as we are with the affirmative statements made on the one hand, and unalterably contradicted by the opposing parties on the other hand, we are impelled to conclude that plaintiff, conceding its good faith, has not discharged *Page 28 
the burden thus imposed. In the case at bar plaintiff has relied exclusively for a recovery against these defendants on an express and unconditional agreement on the latter's part to purchase and pay for services and materials furnished in connection with the burial of the decedent. It does not seek to establish defendants' liability as guarantors or sureties, but relies solely upon a contract freely and voluntarily entered into. The evidence satisfies us that plaintiff has failed to show with any legal certainty the confection of an enforcible contract.
It must be observed that the contract for the services rendered by plaintiff was agreed upon with the said Franck. Undoubtedly, it was only upon Franck's repudiation of responsibility that plaintiff naturally assumed, knowing the relationship existing between Mrs. Rudolph and the deceased, that he could "look to" these defendants for indemnity. This assumption, which we concede was no doubt in good faith, is made manifest by the subsequent conduct and actions of plaintiff, because, throughout plaintiff's correspondence with various parties whom he assumed to be interested in the liquidation of this indebtedness, he not only sought to hold a Mrs. Crane responsible for one-half of the charges but we note a declaration in a letter addressed to Dr. Rudolph, wherein he states: "We must protect our assets and attach the responsibility for this indebtedness upon someone."
(Italics ours). It is evident that the merits of plaintiff's claim must, and can only rest, upon its barren assumption that the closest relations of the decedent would indemnify it for all costs which it had incurred. Such an assumption, standing alone, does not give rise to an enforcible obligation, so as to impose liability upon these defendants.
Plaintiff has urged in its petition that the defendants, having taken into their possession all of the belongings of the deceased, have, by such action, accepted the succession of the deceased, thus rendering themselves liable for all of the debts of the deceased.
Though we find this allegation in plaintiff's petition, plaintiff's counsel has not referred to it in his brief. The record satisfies us that neither defendant accepted the succession of decedent. No act or any conduct by either defendant, which could be held to constitute an acceptance of the succession, has been pointed out to us, and we are unable to find any. It is shown that the decedent left no property of any kind or nature save wearing apparel and two or three gas stoves. It is uncontradicted that these simple belongings were sent by defendant, Mrs. Rudolph, to the granddaughter of decedent, a Mrs. Crane, residing in San Antonio, Texas. We, therefore, find no merit in this latter contention.
We are not unmindful of the accepted rule that the findings of fact of a trial court should not be reversed unless there appear manifest error. From the record as presented to us, we are convinced that the learned judge, a quo, has fallen into error, requiring a reversal of his judgment.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and it is reversed, and it is now ordered that there be judgment herein dismissing plaintiff's suit at its cost.
Reversed.