[Civil No. 4495.   Filed December 7, 1942.]

[131 Pac. (2d) 989.]

F. W. GRIFFEN, as Administrator of the Estate of Adolf Launer, Deceased, Appellant, v. DALTON H. COLE and OLIVER H. MAUD, Co-partners, Doing Business Under the Firm Name and Style of MARTIN MORTUARY, Appellees.

Messrs. Stockton and Karam, Mr. Eli Gorodezky and Mr. J. W. Cherry, Jr., for Appellant.

Mr. Chas. H. Reed, for Appellees.

McALISTER, J.—This action was brought by Dalton H. Cole and Oliver H. Maud, co-partners, doing business under the name of Martin Mortuary, against F. W. Griffen, administrator of the estate of Adolf Launer, deceased, and, from a judgment in favor of the plaintiffs for the amount sought, defendant appeals.

The record discloses that in response to a call from the office of the sheriff of Pinal County, about midnight,

November 19, 1939, the plaintiffs sent their ambulance 35 miles west of Florence to a point on the highway where a car had run into a bridge resulting in the death of the driver and owner, Adolf Launer. They took the body to their mortuary in Florence, and Cole, one of the plaintiffs, embalmed it by the hypodermic method, wrapped it with cotton and prepared a hardening compound. The body was then placed in a casket and sealed and remained in the mortuary for two days where anyone could view it.

During these two days the plaintiffs made an investigation as to the value of the estate of the deceased, who had died intestate and without relatives in the United States. They inquired of the mining company in Superior where the deceased had worked and of the bank at Superior, and also consulted Attorney Tom Fulbright of Florence, who had represented Hanna Launer, former wife of the deceased, in a divorce action in Pinal County in 1939. They learned that deceased owned stocks of the value of $1,500 to $1,800; that he had some $900 or $1,000 on deposit in the bank; that he had an undivided one-half interest in 120 acres of land located in Sacramento County, California, of the approximate value of $40 an acre; that there was insurance on the car involved in the accident; and that the whole estate had a probable value of between $6,000 and $7,000.

The body as prepared by the plaintiffs was procured from them and taken to Superior for burial by Harold Smith, the mortician at that place, and for this service Smith received $137.

On January 15, 1940, Hanna Launer, the divorced wife of deceased, was appointed administratrix of the estate, and on January 26, thereafter the plaintiffs filed with her a claim for their services, verified by plaintiff Maud, for $696.49, which was made up of the following items: telephones and telegrams endeavoring to find relatives of the deceased, $11.49; going for and return-

ing the body of deceased from the place of the accident to Florence, $35; embalming the body $50; casket and outside box, $600. This claim was disallowed by the administratrix on February 29, 1940, upon the ground that the amounts were unreasonable and the plaintiffs promptly advised of this action. On October 28, 1940, the defendant qualified as administrator, the administratrix having been theretofore removed, and on August 2, 1941, 17 months after the claim had been disallowed, the plaintiffs filed this action for the funeral expenses.

In his answer the defendant alleges, first, that the cause of action attempted to be stated in the complaint was barred by the provisions of subdivision 3, section 29-201, Arizona Code 1939, in that it was a liability, created by statute, and more than one year had elapsed since the cause of action accrued; and second, that the charges for the services and the merchandise furnished were unreasonable in view of the rule that their value should be determined in accordance with the ability of the deceased's estate to pay, his social condition and station in life being considered.

Appellant assigns five errors which he discusses under four propositions of law, but he relies for reversal mainly on two of these. The first is that the items of the account were barred by limitation under subdivision 3, section 29-201, Arizona Code 1939, reading as follows:

"29-201. *One-year limitation.*—There shall be commenced and prosecuted within one (1) year after the cause of action shall have accrued, and not afterward, the following actions:

"3. Upon a liability created by statute, other than a penalty of forfeiture."

The claim for the funeral expenses, which was presented to the administratrix some time prior to February 29, 1940, was on that day disallowed by her and

prompt notice of this action given to the claimant. The position of appellant is that the cause of action for these expenses accrued on the day of disallowance and that funeral expenses being a liability created by statute any action seeking to recover them must be filed before the expiration of one year from the date of accrual or it will be barred by this statute.

The term "liability created by statute" has been construed many times and the courts define it as a liability that comes into being solely by statute and as having no existence prior to the enactment creating it, though under the holding in *Santa Cruz County* v. *McKnight,* 20 Ariz. 103, 177 Pac. 256, the term "statute," in this connection, is broad enough to include a liability created by the state constitution. In *Fidelity & Deposit Co. of Maryland* v. *Lindholm,* 9 Cir., 66 Fed. (2d) 56, 58, 89 A. L. R. 279, the court makes this statement: "A liability created by statute" is "a liability which would not exist but for the statute." See *Oregon-Washington R. & Nav. Co.* v. *Seattle Grain Co.,* 106 Wash. 1, 178 Pac. 648, 185 Pac. 583; *Hocking Valley R. Co.* v. *New York Coal Co.,* 6 Cir., 217 Fed. 727; *Baldwin v. Fenimore,* 149 Kan. 825, 89 Pac. (2d) 883; *Abell v. Bishop,* 86 Mont. 478, 284 Pac. 525; *Whitten* v. *Dabney,* 171 Cal. 621, 154 Pac. 312.

The question arises, therefore, whether funeral expenses are made a charge against the estate of deceased by sections 38–1317, 38–1318 and 43–5202, Arizona Code 1939, as contended by appellant. The first of these sections fixes the order in which the debts of a deceased shall be paid, the funeral expenses being placed first; the second, the time when claims are payable, making it the duty of the executor or administrator to pay funeral expenses and those of the last sickness as soon as he has funds in his hands; and the third points out the persons upon whom the duty of burial is imposed under the various circumstances in which a deceased

may have been living at the time of his death and makes the failure of the proper person to perform it a misdemeanor. If appellees' right of recovery rests solely on these provisions of the statute, and they create a statutory liability, the one-year limitation had run when the action was filed, whether it began when the goods were furnished or the claim for them disallowed.

Appellees contend, however, and the authorities support the contention, that the rule that an estate is liable for the reasonable burial expenses of the decedent is of ancient origin and fully established by the common law. Such a liability is not, therefore, a statutory creation but exists independently of the statute. It is true that it is neither a debt of the decedent, since it arises after his death, nor an expense of administration, since it is generally incurred before the administration of the estate begins, but, notwithstanding the difficulty of finding a legal basis for it, the courts have generally held that it exists independently of any contract with the administrator and, because of the peculiar necessity of the situation, that the law imposes a liability upon the assets of the estate to pay the reasonable funeral expenses of the deceased. For instance, in *Cape Girardeau·Bell Telephone Co.* v. *Hamil,* 160 Mo. App. 521, 140 S. W. 951, 952, the court says:

"The whole spirit of our law proceeds upon the theory that they are charges which the estate of the decedent—if he has any—must bear. The probate court is commanded, on final settlement, to allow 'all reasonable charges for funeral expenses.' R. S. 1909, § 229. Independent of any statute and at common law, 'Funeral expenses,' says Lord Coke, 'according to the degree and quality of the deceased, are to be allowed of the goods of the deceased, before any debt or duty whatsoever.' 2 Williams on Executors, top page 165, *p. 835 (9 Eng., 7 Am. Ed.); 2 Woerner Am. Law of Administration (2d Ed.) *p. 759, foot page 821. From the very nature of the thing, funeral expenses are not of the character of debts of the deceased, for they ac-

crue after his death, yet from very necessity proper funeral expenses are the first charge upon the assets in the hands of the executor or administrator, being preferred at common law. . . . ''

In *Phillips* v. *Phillips,* 87 Me. 324, 32 Atl. 963, the court uses this language:

''The necessity of a decent burial arises immediately after the decease, and the law, both ancient and modern, pledges the credit of the estate for the payment of such reasonable sums as may be necessary for that purpose, even though such expenses may have been incurred after the death, and before the appointment of an administrator.''

See, also, *Brice* v. *Wilson,* 8 Ad. & E. 349; *Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94, 141 Pac. 922, 52 L. R. A. (N. S.) 1152, Ann. Cas. 1915D, 742; 2 Woerner Am. Law of Adm. (2d Ed.) par. 357.

In addition, we think it plain that sections 38–1317 and 38–1318, *supra,* were enacted for the purpose of fixing and establishing the priority of the legal, enforcible debts against an estate and not to create any liability that did not theretofore exist. In *Brogden* v. *Baughn,* 176 Okl. 339, 55 Pac. (2d) 994, similar statutory provisions in Oklahoma were so construed, and in *Bowen* v. *Daugherty,* 168 N. C. 242, 84 S. E. 265, Ann. Cas. 1917B, 1161, the court expressed the same view in considering a statute of that state of a like import.

Appellant admits that other courts have held that provisions similar to 38–1317 and 38–1318, *supra,* merely fix the priority of the payment of the legal debts of the decedent and do not create a liability, but he contends that in none of the jurisdictions so holding was there a statute of the import of 43–5202, *supra,* which imposes the statutory duty of burial upon various persons. This section creates no financial liability but merely points out upon whom the duty of burial devolves in various circumstances. It is more of a health regulation than an imposition of financial responsibil-

ity, and, in case it should become necessary for these persons to advance funds in order to discharge this duty, there could be no question but that such funds would be recoverable from the estate of the decedent.

It is true that, in considering whether the fee of an attorney for services rendered an administrator, as such, constituted a demand that could be made against the estate, this court said in *Ellsworth* v. *Struckmeyer,* 27 Ariz. 484, 232 Pac. 56, 57, "that the only demands which can be made against the estate, as such, are those which became charges through some act of the decedent, or are expressly made so by statute, as the expenses of the last illness, funeral costs, etc." Appellant calls attention to this statement in support of his position that funeral expenses are a liability created by statute, but it is clear that it was made merely by way of illustration and that it was not intended to be a determination of a matter not then before the court, namely, whether the assets of an estate are liable at common law or solely under the statute for the funeral expenses of the decedent.

The other proposition advanced by appellant is that, even if the cause of action is not barred by the one-year limitation, the charges for the services performed and the merchandise furnished were excessive and unreasonable in view of the rule that their value should be determined by the ability of the estate of decedent to pay, his social condition and station in life being considered.

The appraised value of the estate, after it was determined that the insurance on the car was uncollectible, was $2863.65, though the investigation as to its size made by appellees after they were requested to take charge of the body, disclosed that it was probably between $6,000 and $7,000. One item not included in the appraisal, a half interest in 120 acres of land in Sacramento County, California, of the approximate value of

$40 an acre, which appellees treated as part of the estate, was in dispute at the time of the trial, an action to determine its ownership having been filed in California by an ancillary administrator of the Launer estate.

Under the authorities, a mortician ''called upon to furnish the supplies and services for a funeral is not expected or required to appraise the estate of the deceased, or during the short space of time within which to arrange for the funeral go into the technical requirements or legal safeguards concerning the supplies and services requested or furnished.'' This language was used in *Goeth* v. *McCollum*, Tex. Civ. App., 94 S. W. (2d) 781, 783, and is, we think, a correct statement of the law. See *In re Rooney*, 3 Redf. Sur., N. Y., 15; *Sowers* v. *King*, 32 Wyo. 167, 238 Pac. 540.

The only facts that might be said to show in any degree the station in life and social standing of the deceased are that he was employed as a smelterman by the Magma Copper Company, at Superior, though his exact position does not appear, and that he was a member of the Odd Fellows' Lodge, which had charge of the funeral service.

The evidence of appellee Cole and of two other morticians acquainted with funeral costs, Harold Smith, of Superior, and Jess Meldrum, of Mesa, was that the charges for the services rendered, including the furnishing of the casket, was in accord with those generally made for similar services and goods. The particular item claimed to be unreasonable, $600 for the casket, was not, according to their testimony, excessive when the class of casket and the services it was necessary to render in preparing the body for burial are considered.

After hearing all the testimony, the court came to the conclusion that the charges were not unreasonable, and while it may seem, to a person unacquainted

with the charges for funeral expenses, including the costs of caskets, that $600 for a casket for a person in the situation of deceased was excessive, even if that amount included also certain professional services, yet this would not, in the light of the size of the estate and the station in life of deceased, justify a holding that the judgment was not supported by the evidence.

In an effort to determine the reasonable value of the services and merchandise furnished by appellees, the latter's counsel asked appellee Cole ''What did that casket cost you?'' and an objection to the question by appellant's counsel was sustained. Appellant complains of this ruling and, we think, justifiably so, since the wholesale cost of the casket, while not conclusive of the matter, is a factor the court might have considered in determining the reasonable value of the charge for it at retail. However, the error was not prejudicial, since two other witnesses testified that the cost at wholesale of caskets practically identical with the one here involved was $165. This gave appellant whatever benefit he could have derived from the answer.

Finally, it is urged that the item of $11.49 for telephone calls and telegrams incurred by appellees in an effort to locate relatives of the deceased is not, under the statute, a funeral expense and in addition that there is no duty on the part of a mortician to locate relatives. It is true that the statute does not specifically mention these items but it occurs to us that where, as in this instance especially, the deceased had no relatives in the state with whom the mortician could consult as to the manner and place of burial, it is highly proper for him to endeavor to locate them and any reasonable expense incurred in an effort to do so would be a proper charge against the estate.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.