E. Max Gladstone, administrator, *vs.* The Murray
Company & others.

Plymouth.    May 7, 1943. — September 29, 1943.

Present: Field, C.J., Donahue, Qua, Cox, & Ronan, JJ.

*Fiduciary. Corporation,* Officers and agents, Stockholder, Sale of stock.
*Fraudulent Conveyance. Fraud. Executor and Administrator,* Insolvent estate, Accounts. *Insolvency. Probate Court,* Decree, Costs.

The mere fact that one acting for himself and for a corporation in purchasing stock in the corporation from an administrator, with whom
he dealt at arm's length, was an officer, director and stockholder of
the corporation did not make him a fiduciary toward the seller.

A finding of the commission of a fraud upon creditors of a decedent's estate by one who, not being a fiduciary toward the administrator of the
estate and dealing at arm's length with him, purchased from him corporate stock of the estate which had only a narrow market and as to
whose value opinions might vary was not warranted by the mere fact
that the purchase price was only half of the value which subsequently
was placed upon the stock in judicial proceedings.

A proceeding in equity in a Probate Court, based on the ground that a
decedent's estate was insolvent and that full payment of a judgment
against the estate, in effect made by the administrator, was a fraud
upon other creditors of the estate, failed where it appeared that the
estate had not been adjudicated insolvent in the manner specified in
G. L. (Ter. Ed.) c. 198.

A decree in a proceeding in equity brought in a Probate Court by a succeeding administrator of an estate must stand on appeal by certain respondents so far as it ordered another of the respondents, the former
administrator of the estate, to make payments to the petitioner because
of that respondent's disposal of certain assets of the estate, where it
appeared that that respondent did not appeal from the decree and that
he had not seasonably asserted any right he might have had to have the
subject matter of the proceeding determined in his accounting on the
probate side of the court.

An administrator should receive in his accounting any sums to which he
might be entitled for services and expenses in prosecuting a petition
in equity to enforce alleged claims of the estate.

Petition in equity, filed in the Probate Court for the
county of Plymouth on July 7, 1941.

The case was referred to a master, whose report was confirmed. Evidence was also heard and reported by *Stone,* J.,

who entered the following final decree: "1. That the respondent corporation, The Murray Company, and the respondent Sherman E. Murray, pay to the petitioner the sum of $894.41, which they received as the result of an execution which issued from the Municipal Court of the City of Boston, together with interest thereon . . . amounting to $196.77, making a total of . . . $1,091.18.  2. That the respondent George Y. Sawyer and the respondent Sherman E. Murray, pay over to the petitioner the sum of . . . [$50] per share . . . in addition to the . . . [$50] per share heretofore paid, for the forty-one shares of stock which the said George Y. Sawyer purchased from the administrator of the estate of Milton E. Murray, or the sum of . . . $2,050.  3. That the respondent corporation, The Murray Company, and the respondents Sherman E. Murray and George Y. Sawyer, pay over to the petitioner the sum of . . . $250 in connection with the sale and purchase of five shares of stock of The Murray Company.  4. The respondents pay the costs of the petitioner in the sum of . . . $25."  The respondents Sawyer and The Murray Company appealed.

*S. MacMillan,* for the respondents Sawyer and another.

*W. C. Rosen, (W. H. Gilday* with him,) for the petitioner.

Qua, J.  This petition is brought by the administrator de bonis non with the will annexed of the estate of Milton E. Murray against The Murray Company, one Sawyer, and Sherman E. Murray, the former administrator with the will annexed of the estate.

Milton E. Murray had been the founder and president of The Murray Company, and at the time of his death on June 3, 1936, he owned forty-six shares of its stock.  On October 29, 1938, Sherman E. Murray, as administrator of the estate, sold forty-one of these shares to the respondent Sawyer for $50 a share, and on May 8, 1939, Murray sold the remaining five shares to the respondent The Murray Company, which was represented in the transaction by the respondent Sawyer.  At the times of these sales Sawyer was the president, treasurer, and a director of the company and owned a majority of its stock.  In July, 1937, before the sales of stock, the company, at the instance of Sawyer,

had brought an action at law against Sherman E. Murray, administrator, in which the first count was to recover a sum of money alleged to have been collected in behalf of the company by the deceased in his lifetime and not turned over by him to the company and the second count was to recover the sum of $250 alleged to have been advanced by the company to a daughter of the deceased on the day following his death "for the purpose of paying the funeral expenses" of the deceased and alleged to have been spent by her for that purpose. On February 11, 1938, an agreement for judgment for The Murray Company was filed in that action, signed by Sherman E. Murray as administrator and by the attorneys for the company, in the sum of $886.91, which sum represented the aggregate of both claims of the company against the estate of the deceased. In carrying through the sale of the stock in the following October an arrangement was made between Sawyer and Sherman E. Murray, administrator, or their attorneys, whereby, in effect, the amount of an execution obtained on the judgment was applied in part payment of the selling price of the stock, and the administrator received the balance. In this way the company received full payment of its claim against the estate of Milton E. Murray. The trial judge, in his findings of fact on the present petition, found that at that time the estate was hopelessly insolvent, and that Sawyer knew that fact. A master appointed to ascertain the value of the stock found as a conclusion from subsidiary facts reported by him that it was worth $100 a share, twice the amount Sawyer paid for it.

The petition, as we construe it, sets out two causes of action, (1) that Sawyer, as an officer of The Murray Company, was a fiduciary toward Sherman E. Murray, the former administrator, a stockholder, and was guilty of a breach of his fiduciary obligation and also of a fraud upon the creditors of the estate in buying stock from Murray for himself and the company at a "grossly inadequate" price, and (2) that Sawyer (and through him The Murray Company) and Sherman E. Murray were guilty of a fraud upon the creditors of the insolvent estate in obtaining for

the company payment in full of the sum due to it from the deceased by means of the action at law, the agreement for judgment, and the application of the amount of the execution against the price of the stock. Included in this second cause of action is an allegation that Count 2 in the declaration in the action at law "had no privity between the parties and was not a proper basis for a suit," and that this was known to the respondents.

The judge entered a final decree for the petitioner on both causes of action, and Sawyer and The Murray Company appeal. The evidence is reported.

Even if we accept the market value of the stock as found by the master, in our opinion no fraud has been established on the part of Sawyer or The Murray Company in purchasing the stock from the former administrator at less than that value. It is true that Sawyer, as an officer of the company, was a fiduciary toward the company and was bound in all his dealings with the company to place its interests above his own and to exercise the utmost good faith. But Sawyer was not dealing with the company in buying the stock that he bought for himself, and in buying the five shares that he bought for the company his duty was to the company for which he was acting and not to the seller of the stock. His position as an officer and stockholder of the company did not of itself create a fiduciary relation between himself and a single stockholder whose stock he might buy. *Blabon* v. *Hay*, 269 Mass. 401, 407. *Goodwin* v. *Agassiz*, 283 Mass. 358, 361. *Faulkner* v. *Lowell Trust Co.* 285 Mass. 375, 378. See *Lee* v. *Fisk*, 222 Mass. 424, 426. There was no evidence of further circumstances which could create such a relation. There was no evidence that Sawyer had induced or permitted the former administrator to rely upon Sawyer's peculiar knowledge or judgment as to the value of the stock, or that Sawyer had undertaken to advise the administrator, as in *Reed* v. *A. E. Little Co.* 256 Mass. 442, 446, or that Sawyer had sought out the administrator "for the purpose of buying his shares without making disclosure of material facts within his peculiar knowledge and not within reach of the stockholder" (*Good-*

*win* v. *Agassiz*, 283 Mass. 358, 363), or that Sawyer had in any way deceived the administrator by misrepresentation, or by what may be called active concealment, or by failing to reveal anything which he was in duty bound to reveal. See *Swinton* v. *Whitinsville Savings Bank*, 311 Mass. 677. The former administrator himself had been for many years an employee of the company in a position to form some judgment of the value of the stock, and he could reasonably be expected to make inquiries about anything of importance that he did not know. Sawyer's obligations as a purchaser of the stock were not enlarged in relation to the matters here involved by the fact that the person from whom Sawyer was buying was himself a fiduciary. *Barth* v. *Fidelity & Columbia Trust Co.* 188 Ky. 788, 798. So far as appears, Sawyer and the company on the one hand and the former administrator on the other hand dealt with each other at arm's length.

In the absence of a fiduciary obligation an intent on Sawyer's part to defraud creditors of the estate ought not to be found from the disparity between the purchase price of the stock and what the master has subsequently found to have been its fair value. The case differs from that of a living debtor disposing of his own property in such a way as to secure an advantage to himself to the detriment of his creditors. An administrator making a sale ordinarily has no motive to defraud creditors of the estate, and one dealing with him should not lightly be found to have joined with him in a scheme to accomplish that purpose. The stock was of such a character that honest opinions as to its value may well have varied greatly. There could have been only a narrow market for it. A long time might have elapsed before the value found by the master could have been obtained. Whether the estate was insolvent or not, a purchaser was not bound at his peril to pay the value that a court might afterwards fix upon the property. In our opinion the evidence did not justify a finding of fraud on the part of Sawyer or the company in the purchase of the stock. See *F. & M. Schaefer Brewing Co.* v. *Moebs*, 187 Mass. 571; *Pierce* v. *O'Brien*, 189 Mass. 58, 60; *Cohen* v. *Levy*, 221

Mass. 336, 339; *Harris* v. *Flynn*, 272 Mass. 8, 13, 14; *Merchants Discount Co.* v. *Esther Abelson, Inc.* 297 Mass. 517, 519, 520; *Thomas E. Hogan, Inc.* v. *Berman*, 310 Mass. 259.

The trial judge found that it was "the desire" of the former administrator and of his attorney to secure money from the sale of the stock, "so that they could keep said money for their own uses and purposes." He also found that the former administrator and his attorney "worked with" Sawyer and the company "to permit" the company to purchase the stock for $50 a share, so that the former administrator and his attorney "could secure some ready cash for their own purposes." If these findings are to be taken as meaning that Sawyer and the company joined in a scheme to aid the former administrator and his attorney to embezzle from the estate, they are beyond any allegations in the petition and are wholly without support in the evidence.

This brings us to the petitioner's second cause of action, based upon the contention that the respondents were guilty of a fraud upon the creditors of the Murray estate in obtaining for the company payment in full of its judgment against the former administrator.

On this branch of the case it should first be noted that there was no evidence that the company's principal claim against the estate as set forth in the first count of its action at law was in itself a fraudulent claim. So far as appears, the estate did owe the company the amount claimed for collections made by the deceased in his lifetime and not handed over. As to the smaller claim for $250 alleged in the second count to have been advanced for funeral expenses there was some conflict in the evidence. Sawyer testified that upon hearing of the death of Milton E. Murray he "called" Murray's daughter; that she said "she hadn't any funds to work with"; and that he let her have the money "for funeral expenses." The former administrator testified without objection that the $250 was "for immediate expenses" and "to live on," but this seems to have been only his opinion, and it does not appear that he had personal knowledge of the exact nature of the transaction. On this evidence we do not think it should be found

that the company's claim for the $250 was pursued with the knowledge that it was unfounded, if in fact it was unfounded. In case of necessity a stranger to the estate may incur funeral·expenses which become chargeable against the estate. *Breen* v. *Burns*, 280 Mass. 222, 224–225. *Wilder Grain Co.* v. *Felker*, 296 Mass. 177, 180. In such cases there is sufficient "privity" to support the action. This claim, whether correct or not, may well have been put forward in good faith. Since the action at law is not shown to have been as to either of its counts a fraudulent action, the petitioner's assertion of fraud in respect to it must rest upon the insolvency of the estate and upon the contention that through payment in full of its judgment The Murray Company fraudulently received money of the estate which belonged in fact to other creditors.

Ordinarily a preference by a living insolvent debtor is not a fraudulent conveyance. *Mason* v. *Wylde*, 308 Mass. 268, 283. But it may be that it is a fraud where a creditor of an estate and the administrator, both knowing that the estate is probably insolvent, collusively agree to the entry of judgment in an action by the creditor against the administrator, even if founded on a valid cause of action, and then pay and receive payment of the amount of the judgment, where the parties intend to secure in this manner a preferential payment to one creditor and thus wrongfully to divert money in the administrator's hands which he holds in trust and which in law should go elsewhere, and where that result is actually brought about. See *Gladstone* v. *Bank of Commerce & Trust Co.* 281 Mass. 177; *Comstock* v. *Bowles*, 295 Mass. 250, 264, 265; *Wetmore & Morse Granite Co.* v. *Bertoli*, 87 Vt. 257. (We intend no implication as to whether the evidence in the present record would justify a finding of these facts.) And it may be that the judgment so obtained can be attacked in a subsequent suit in equity by a succeeding administrator as the representative of the defrauded creditors on the principle illustrated in *Connor* v. *Haverhill*, 303 Mass. 42, 47, and cases cited. See *Fistel* v. *Car & General Ins. Corp. Ltd.* 304 Mass. 458, 460; *Commonwealth* v. *Aronson*, 312 Mass. 347, 352, 353;

Am. Law Inst. Restatement: Judgments, § 91. We need not now decide these questions of law, since in this instance a definite obstacle stands across the petitioner's path. The estate has never been adjudicated insolvent, and as we have seen insolvency is, in any event, a necessary part of this branch of the petitioner's case. Without it no preferential payment and no fraud upon creditors has been proved. The statute law provides one standard method for the judicial establishment of the fact of insolvency of an estate. G. L. (Ter. Ed.) c. 198, §§ 2, 3, 4, 5, 8, 9, 11, 18, 23. This method includes the final determination of claims, ascertainment whether the assets are sufficient to cover them, and a decree for distribution. In the present case this method was not followed. The former administrator never represented the estate as probably insolvent, and although the present administrator has now made such representation, there has been no adjudication of insolvency and no decree for distribution. Whatever the present appearances may be, it is still possible that through failure to prove claims, recovery of assets, or for other reasons the estate may turn out to be solvent and that no harm and no cause of action will have resulted from the alleged fraud, whatever may have been the knowledge and intent of the parties to the action at law. The decisions seem to establish the proposition that the insolvency of an estate can be judicially determined only in the statutory manner, and that it is not to be determined, perhaps with varying results, in each separate piece of litigation. *Walker* v. *Bradley,* 3 Pick. 261. *Bascom* v. *Butterfield,* 1 Met. 536. *Heard* v. *Drake,* 4 Gray, 514, 516. *Greenwood* v. *McGilvray,* 120 Mass. 516. *Flint* v. *Valpey,* 130 Mass. 385. See *Richards* v. *Nightingale,* 9 Allen, 149; *Harmon* v. *Sweet,* 221 Mass. 587, 597, 598. And in *McIntire* v. *Parker,* 195 Mass. 155, 156, it is said that "Until its insolvency had been ascertained, and declared by decree, the estate must be presumed and treated as solvent in suits by creditors . . . ." Therefore the petitioner's second cause of action fails for lack of a necessary element.

Various appeals, other than from the final decree, have

become immaterial and are deemed to have been waived. The final decree is to be modified by dismissing the petition as to the respondents Sawyer and The Murray Company, but without prejudice to new proceedings against them so far as concerns the alleged cause of action based upon the collection of the judgment by them, if the estate of Milton E. Murray shall have been finally adjudged insolvent according to the statutes. Inasmuch as the respondent Sherman E. Murray has not seasonably asserted any right he may have had to have the subject matter of this petition determined in his accounting on the probate side of the court (see *Green* v. *Gaskill*, 175 Mass. 265, 269; *Allen* v. *Hunt*, 213 Mass. 276), and since he has not appealed in this proceeding, the decree will stand unaltered as to him.

Costs and expenses of this appeal, to the amount in all of $528, are awarded to the respondents The Murray Company and Sawyer against the petitioner. The petitioner, being the administrator, will receive any sums to which he may be entitled for services or expenses in his accounting for his administration of the estate. *Ensign* v. *Faxon*, 224 Mass. 145.

*Ordered accordingly.*