### NATIONAL METROPOLITAN BANK OF WASHINGTON et al. v. JOSEPH GAWLER'S SONS, Inc.

No. 461.

Municipal Court of Appeals for the District of Columbia.

March 7, 1947.

As Corrected on Denial of Rehearing April 4, 1947.

---

Louis M. Denit, of Washington, D.C. (Coleman L. Diamond, A. Leckie Cox, and Thomas S. Jackson all of Washington, D.C., on the brief), for appellants.

Arthur F. Carroll, Jr., of Washington, D.C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Frederick W. Buchholz died in his apartment at the Occidental Hotel at about three o'clock in the morning of November 22, 1944. His mother Christina Buchholz, an invalid, lived in another apartment at the same hotel. Appellant Doherty, who subsequently qualified as coexecutor of decedent's estate, was called to the hotel immediately after the death. At that time he learned that the Gawler firm of undertakers, appellee here, had been called to remove Mr. Buchholz's body. Before leaving, Doherty told Mrs. Buchholz that he would return at about eleven o'clock and make arrangements for the funeral. Before he returned, and without the knowledge of Mrs. Buchholz, who was too ill to leave her room, a group composed of

Gustav Blank and his sister Louise Stoner, cousins of the decedent, together with some of his employees and friends went to the Gawler funeral establishment about 10 a. m. and arranged for the funeral.

Mr. Gawler prepared a contract form and showed it to the group, indicating the costs involved. The largest item involved was a "copper deposit" casket which was the only one of that type plaintiff had. It was selected because members of the group making the arrangements stated deceased "always wanted the best" and· that he "always did want a metal casket." At the suggestion of Mrs. Stoner, Gustav Blank signed his name to the contract and added the name of Mrs. Buchholz as "guarantor." He instructed plaintiff to send the bill to Mrs. Buchholz. When Mr. Doherty returned to the hotel about eleven o'clock he learned that the funeral arrangements had already been made. He did not inquire into the arrangements nor seek to learn what type of casket or funeral had been ordered.

A few days later Gawler sent a bill to Mrs. Buchholz. Two months after that she died, leaving a will in which Mr. Doherty was· named sole executor. In the meantime, on December 21, 1944, Doherty and the National Metropolitan Bank had qualified as executors of Frederick's estate. Soon thereafter plaintiff billed defendants Doherty and the Bank as executors of Frederick's estate. Without consulting the beneficiaries of the estate the executors decided that $1,000 would be a proper amount to pay for the ·burial. This they did and declined to pay more.[1]

Gawler filed two suits for the balance of $2,863: one against Mr. Doherty as executor of the estate of Christina Buchholz and against Gustav F. Blank, individually; and the other against Mr. Doherty and the Bank as executors of the estate of Frederick W. Buchholz. These suits were consolidated for trial below and resulted in judgment in favor of the Christina Buchholz estate and in favor of Blank, individually; and in favor of plaintiff for the full amount against the executors of the Frederick Buchholz estate. The judgment was predicated upon a written finding in favor of plaintiff for the amount claimed "or so much thereof as the assets which have or should come to the hands ·of the defendants to be administered are sufficient to pay, regard being had for the whole amount of said assets and of all claims lawfully payable out of the same."

There were appeals from both judgments; but the appeal from the judgment in favor of the Christina Buchholz estate and Blank was subsequently withdrawn. Accordingly this appeal involves only the correctness of the judgment against the Frederick Buchholz estate.

 Appellants contend that because the executors were not consulted and did not arrange for or authorize the funeral they cannot be held liable for the cost thereof. But it is well settled that the estate of a decedent is liable, usually primarily, for the expenses of a funeral suitable to the position of the decedent and the condition of his estate.[2] This rule is subject to the common law exception that the husband was liable for the funeral expenses of his deceased wife.[3] Some courts have announced a corollary rule that a third person

---

[1] As sole executor of the estate of Christina Buchholz, Mr. Doherty approved a claim for the balance of $2,863 against her estate. But certain of her heirs, including Gustav Blank and Louise Stoner who had arranged for the funeral, filed exceptions to this allowance and it was disallowed by the Probate Court as a charge against her estate. Orders of Holtzoff, J., March 1, 1946, and April 4, 1946, in Administration Case No. 64692, United States District Court for the District of Columbia. See also Order of United States Court of Appeals for the District of Columbia, January 8, 1947 in Cases No. 64692, dismissing appeal without prejudice.

[2] Canada v. Canada, 243 Ala. 109, 8 So. 2d 846; In re Ewing's Estate, 234 Iowa 950, 14 N.W.2d 633; Succession of Lewis, La.App., 12 So.2d 7; Carton v. Shea, 312 Mass. 634, 45 N.E.2d 826; Brockmeyer & Lykin v. Droege, 215 Minn. 262, 9 N.W. 2d 753; In re Kirschstein's Estate, 213 Minn. 1, 4 N.W.2d 633; see also Annotations: 52 L.R.A.,N.S., 1152; 33 L.R.A. 660.

[3] Palmer v. Turner, 241 Ky. 322, 43 S. W.2d 1017; Kent v. Knight, 231 Mo.App. 235, 98 S.W.2d 318; Reynolds v. Rice, 224 Mo.App. 972, 27 S.W.2d 1059; Apostle v. Pappas, 154 Misc. 497, 277 N.Y.S. 400.

is not to answer for funeral expenses except upon his express or implied contract to become personally liable therefor.[4] And it has also been held that even where a third person arranges or pays for a funeral there is still an implied obligation on the part of the estate to pay (or repay) the reasonable expenses thereof.[5]

In the case before us decedent's mother was too ill to take any part in the arrangements. For that reason the group headed by his two cousins engaged the services of the undertaker and arranged the details of the funeral. They were obviously not mere intermeddlers, officiously interfering in a family or estate matter. That being so, the undertaker had a right to deal with them and then look to the estate for compensation.[6] And the fact that the executors took no part in the arrangements does not, standing alone and under the facts of this case, relieve the estate of liability.[7] It is true that one of the executors, the Bank, did not learn until a few days later that it had been named in the will. But it is also true that the coexecutor Mr. Doherty was present soon after his testator died and again later that morning and knew that the funeral arrangements had been made but did nothing to countermand the type of funeral ordered by the cousins or even to inquire as to the cost thereof. The undertaker was therefore entirely within his rights in proceeding to perform the services ordered in the belief and expectation that he would be paid by the estate.[8]

Defendants next contend that the provision in the will directing them to " * * * pay all of my just debts and expenses of my last illness, funeral and burial, in such amounts as they may deem proper * * * " gives them complete and exclusive discretion to decide what is a proper amount for funeral expenses, and that the trial court had no power to review their action in deciding that $1,000 was the proper amount to be paid for the funeral. But we think the decision of executors to pay or disallow funeral expenses is always subject to final review and determination by the courts as to whether the action of the executors was reasonable or otherwise.[9] What is a reasonable amount must depend upon the circumstances of the decedent, his station in life and the value of his estate.[10] Here plaintiff's evidence was that the charge was fair and reasonable, and no contradictory evidence on that point was introduced by the executors. The testimony as to the value of this estate was rather vague. But we think it is safe to say that the net worth is not under $87,000, and (depending upon the disposition of certain claims) may amount to more than $350,000. Under the circumstances we cannot say as a matter of law that the cost of this funeral was excessive.

The executors finally contend that under Code Sections 18—520 and 20—605, $600 is the maximum allowable, and they cite a very early case, In re Butler's Estate, 3 MacArthur 535, 10 D.C. 535. But in that

[4] Hanley Co. v. Lacy, 69 Ga.App. 456, 26 S.E.2d 136; Bultman Mortuary Service v. Rudolph, La., 5 So.2d 26; Carton v. Shea, supra; Hatton v. Cunningham, Sup., 162 N.Y.S. 1008; Crookham v. Guardian Funeral Home, 193 Okl. 163, 142 P.2d 610.

[5] Golden Gate Undertaking Co. v. Taylor, 168 Cal. 94, 141 P. 922, 52 L.R.A., N.S., 1152, Ann.Cas.1915D, 742; Gladstone v. Murray Co., 314 Mass. 584, 50 N.E.2d 958; Joseph S. Waterman & Sons v. Hook, 246 Mass. 522, 141 N.E. 596, 30 A.L.R. 440; Cape Girardeau Bell Telephone Co. v. Hamil, 160 Mo.App. 521, 140 S.W. 951; In re Kulyk's Estate, 150 Misc. 307, 269 N.Y.S. 70, supplementing 149 Misc. 855, 268 N.Y.S. 305, reversed on other grounds, 243 App.Div. 443, 227 N.Y.S. 807, appeal dismissed, 243 App.Div. 443, 277 N.Y.S. 807. See also cases collected

in 30 A.L.R. 444, 34 C.J.S., Executors and Administrators, § 384, p. 136, n. 59.

[6] Golden Gate Undertaking Co. v. Taylor, supra; Cape Girardeau Bell Telephone Co. v. Hamil, supra.

[7] Cape Girardeau Bell Telephone Co. v. Hamil, supra; Watson v. Cook, 170 Md. 377, 184 A. 908; Hodge v. Cameron, 132 Pa.Super. 1, 200 A. 238.

[8] See Hodge v. Cameron, supra, where the court expressly denied an executor the power to change or repudiate arrangements already made by the next of kin.

[9] Gooch v. Beasley, 137 Tenn. 407, 193 S.W. 132.

[10] Sinnott v. Kenaday, 14 App.D.C. 1, 25, reversed on other grounds, 179 U.S. 606, 21 S.Ct. 233, 45 L.Ed. 339. See also cases collected in 34 C.J.S., Executors and Administrators, § 384, p. 137, n. 68, 24 C. J. 308, n. 29.

case the personal estate was not sufficient to pay debts in full and the case was one before the Probate Court for an allowance under the statute; it did not involve a bill asserted as a general claim. The courts have treated these code sections as a limitation on the amount which may be given priority over the claims of other creditors and of beneficiaries, not as an unvariable maximum which must always be observed.[11] Thus in practice funeral charges exceeding $600 become an unsecured claim to be classed with other general debts of the estate, and are essentially no different from claims for debts due from a decedent.[12] These considerations the trial judge recognized when in his written finding he carefully prescribed, as required by Code 1940, Section 20—502, that the judgment was only to be paid pro rata with other general claims lawfully payable out of the estate. See Pickrell v. Thompson, 12 App.D.C. 449.

The decision was correct and will be

Affirmed.

---

[11] See Sinnott v. Kenaday, footnote 10, supra.

[12] Eastman v. Allen, 308 Mass. 138, 31 N.E.2d 547; Goeth v. McCollum, Tex.Civ. App., 94 S.W.2d 781.